WADDELL & REED FINANCIAL, INC., Waddell & Reed, Inc., and Waddell & Reed Investment Management Company, Plaintiffs,

v.

TORCHMARK CORPORATION, Ronald K. Richey, Harold T. McCormick, and Louis T. Hagopian, Defendants.

Civil Action No. 01–2372–KHV.

United States District Court,
D. Kansas.

Feb. 4, 2003.

James D. Griffin, Stephen J. Torline, Blackwell, Sanders, Peper, Martin, LLP, Kansas City, MO, Angel D. Mitchell, Kansas City, KS, Thomas H. Dahlk, Megan Sebastian Wright, Trenton P. Bausch, Nicole T. Bock, Thomas H. Dahlk, Steven Grasz, Mefan Sebastian Wright, Blackwell, Sanders, Peper, Martin, LLP, Omaha, NE, for Plaintiffs.

William R. Sampson, Scott C. Nehrbass, Matthew C. Miller, Brenda, Ranee, Mesker, Shook, Hardy & Bacon L.L.P., Overland Park, KS, Hobart A. McWhorter, Jr.,

James W. Gewin, Michael R. Pennington, Bradley, Arant; Rose & White, LLP, Betsy Palmer Collins, William J. Baxley, Betsy Palmer Collins, Baxley, Dillard, Dauphin & McKnight, Birmingham, AL, for Defendants.

## MEMORANDUM AND ORDER

VRATIL, District Judge.

Plaintiffs have filed suit against Torchmark Corporation ("Torchmark") and Ronald K. Richey, Harold T. McCormick and Louis T. Hagopian. Torchmark is the former corporate parent of Waddell & Reed, Inc. The individual defendants are former common directors of Torchmark and Waddell & Reed Financial, Inc. Plaintiffs seek to recover under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 et seq., and assert Kansas common law claims for breach of fiduciary duty, knowing participation in breach of fiduciary duty, and interference with prospective business relations. This matter is before the Court on Defendant Torchmark Corporation's And Defendant Ronald K. Richey's Motion For Summary Judgment (Doc. # 52) filed March 6, 2002. For reasons stated below, defendants' motion is sustained as to the claims of Waddell & Reed, Inc. and Waddell & Reed Financial, Inc. The motion is otherwise overruled.

### Summary Judgment Standards

Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. See Fed.R.Civ.P. 56(c); accord Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); Vitkus v. Beatrice Co., 11 F.3d 1535, 1538–39 (10th Cir.1993). A factual dispute is "material" only if it "might affect the outcome of the suit under the governing law." Anderson, 477 U.S.

at 248, 106 S.Ct. 2505. A "genuine" factual dispute requires more than a mere scintilla of evidence. Id. at 252, 106 S.Ct. 2505.

The moving party bears the initial burden of showing the absence of any genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); Hicks v. City of Watonga, 942 F.2d 737, 743 (10th Cir.1991). Once the moving party meets its burden, the burden shifts to the nonmoving party to demonstrate that genuine issues remain for trial "as to those dispositive matters for which it carries the burden of proof." Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc., 912 F.2d 1238, 1241 (10th Cir.1990); see also Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); Bacchus Indus., Inc. v. Arvin Indus., Inc., 939 F.2d 887, 891 (10th Cir.1991). The nonmoving party may not rest on its pleadings but must set forth specific facts. Applied Genetics, 912 F.2d at 1241.

"[W]e must view the record in a light most favorable to the parties opposing the motion for summary judgment." Deepwater Invs., Ltd. v. Jackson Hole Ski Corp., 938 F.2d 1105, 1110 (10th Cir.1991). Summary judgment may be granted if the nonmoving party's evidence is merely colorable or is not significantly probative. Anderson, 477 U.S. at 250–51, 106 S.Ct. 2505. "In a response to a motion for summary judgment, a party cannot rely on ignorance of facts, on speculation, or on suspicion, and may not escape summary judgment in the mere hope that something will turn up at trial." Conaway v. Smith, 853 F.2d 789, 794 (10th Cir.1988). Essentially, the inquiry is "whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail

as a matter of law." *Anderson,* 477 U.S. at 251–52, 106 S.Ct. 2505.

### Factual Background

For purposes of defendants' motion for summary judgment, the following facts are uncontroverted, deemed admitted or, where disputed, viewed in the light most favorable to plaintiffs.

Before November 1998, Waddell & Reed, Inc. ("W & R") and United Investors Life Insurance Company ("UILIC") were wholly-owned subsidiaries of Torchmark. UILIC issued variable insurance products which W & R distributed and underwrote.[1] Before March 4, 1998, individual defendant Ronald K. Richey was chief executive officer and chairman of the board of Torchmark. Co-defendants Harold T. McCormick and Louis T. Hagopian were directors of Torchmark.

In November 1998, Torchmark spun off W & R. W & R is now a separate and independent company which markets insurance and annuity products. Waddell & Reed Financial, Inc. ("W & R Financial") is now the parent corporation of W & R, and Waddell & Reed Investment Management Company ("W & R Investment") is now a subsidiary of W & R. After the spin off, Torchmark and its former parent corporation, W & R Financial, shared seven directors including Richey, McCormick and Hagopian.

Before the spin off, UILIC compensated W & R for its distribution and underwriting services under a compensation schedule which had been established in 1990 under a principal underwriting agreement ("PUA"). Immediately before the spin off, UILIC and W & R amended the PUA to provide that it would terminate on December 31, 1998, shortly after the spin off. UILIC and W & R had planned to execute a new contract which in part reflected the economic reality that the companies were no longer owned by the same parent corporation. The parties could not reach such an agreement by December 31, 1998, so they again amended the PUA to allow further negotiations in 1999. In early 1999, however, negotiations ceased, and W & R began evaluating proposals from other life insurance companies. In approximately May 1999, W & R and Security Benefit Life Insurance Company ("Security Benefit") agreed in principle to jointly develop and distribute variable life and annuity products beginning January 1, 2000.

On April 19, 1999, UILIC entered into a secret agreement with United Securities Alliance, Inc. ("USA") to develop a new variable product that USA (but not W & R) would distribute.[2] Around late June of 1999, to secure continued distribution of its products until USA products could be introduced, UILIC in bad faith resumed negotiations on a new agreement with W & R. On July 8, 1999, W & R and UILIC reached agreement with regard to compensation and product features effective January 1, 2000 (the "Letter Agreement"). Since August of 1999, the Waddell & Reed entities have characterized the agreement as binding, while UILIC and Torchmark

---

**1.** This fact and many of the factual statements below are based on the Court's Memorandum And Order (Doc. # 44) and the allegations in plaintiffs' Complaint (Doc. # 1), as well as the allegations in various pleadings which the parties filed in related litigation in Alabama. To the extent possible, the Court has outlined plaintiffs' version of events. The Court does not set forth these facts as a definitive statement of what actually happened but simply as background to understand the claims which the parties have asserted in this case and in the Alabama litigation, and to determine whether res judicata bars plaintiffs' claims in this action.

**2.** In contrast, plaintiffs allege that they kept UILIC and Torchmark informed of the proposed deal between W & R and Security Benefit.

have characterized the agreement as tentative. The Letter Agreement provided that in exchange for W & R's agreement to stop considering possible deals with other insurance companies (including Security Benefit) and to not replace existing UILIC policies, UILIC would pay a certain percentage on the assets of W & R's existing, in-force variable annuity book of UILIC business.[3] The agreement also provided that UILIC and W & R would commit the necessary resources to design, create, implement and introduce competitive products and product features. Based on this agreement, W & R ceased negotiations with Security Benefit. Despite its belief that the Letter Agreement was binding, W & R also continued to negotiate with UILIC on a more formal agreement. During those negotiations, UILIC asked W & R to agree not to replace UILIC variable life insurance and annuity policies with policies issued by another insurance company. W & R refused to agree to such a provision.

In January of 2000, W & R began to withhold revenue which it was receiving from customers on UILIC business. Through its independent financial advisors, W & R also began distributing UILIC's new variable product, the Advantage Gold Variable Annuity. W & R maintains that UILIC did not object to the sale of its products or demand that W & R return any monies which it had received. UILIC did inquire about how W & R calculated its compensation, but it did not object after W & R explained the calculation method.

UILIC and W & R continued to negotiate the enforceability of the Letter Agreement and a possible restriction on W & R's ability to replace UILIC policies. During

the negotiations, Torchmark threatened that if W & R did not agree to the terms proposed by UILIC, Torchmark would terminate W & R Investment as investment adviser for Torchmark accounts and institute legal action. The parties, however, did not reach further agreement. As a result, on May 3, 2000, UILIC sued W & R in the Circuit Court of Jefferson County, Alabama. See Alabama Complaint, attached as Exhibit 11 to Defendant Torchmark Corporation's And Defendant Ronald K. Richey's Motion For Summary Judgment (Doc. # 52) filed March 6, 2002 ("Defendants' Motion For Summary Judgment"). In that case, UILIC also sued W & R Financial, Waddell & Reed Financial Services, Inc., Waddell & Reed Insurance Agency, Inc., and Waddell & Reed Insurance Agency of Alabama, Inc. For ease of reference, the Court collectively refers to all such defendants as the "Alabama Defendants."[4] UILIC asserted claims for breach of contract, conversion and tortious interference with the contractual relations between UILIC and its policyholders. UILIC alleged that the original underwriting agreement between UILIC and W & R was controlling and that W & R could not withhold funds based on the Letter Agreement. UILIC also alleged that W & R had wrongfully replaced and threatened to replace its business with products by other insurance companies.[5]

Two days after UILIC filed suit in Alabama, on May 5, 2000, W & R filed a declaratory judgment action against UILIC in the District Court of Johnson County, Kansas. W & R asked the Kansas court to declare that the Letter Agree-

---

3.  The complaint does not explain whether this asset-based fee would be paid annually, monthly or otherwise.

4.  Waddell & Reed Insurance Agency, Inc. and Waddell & Reed Insurance Agency of Alabama, Inc. solicited applications and distrib-

uted non-variable insurance products on behalf of UILIC.

5.  At approximately the same time in May of 2000, UILIC introduced USA products which competed directly with the products which W & R distributed.

ment was binding and that W & R was justified in withholding revenue under that agreement. UILIC removed the case to this Court, see *Waddell & Reed, Inc. v. United Invs. Life Ins. Co.*, No. 00–2209–CM (D.Kan.2000), then asked the Court to decline jurisdiction under the Declaratory Judgment Act, 28 U.S.C. § 2201(a). In the alternative, in deference to the Alabama case, UILIC asked the Court to dismiss this action under the Colorado River doctrine. See *Colo. River Water Conserv. Dist. v. United States*, 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976). The Honorable Carlos Murguia refused to exercise jurisdiction under the Declaratory Judgment Act and dismissed the case. See *Waddell & Reed, Inc. v. United Invs. Life Ins. Co.*, 2000 WL 1595751 (D.Kan. Oct.18, 2000). Neither party appealed.

Meanwhile, on May 24, 2000, the Alabama Defendants filed their answer and counterclaims against UILIC, joining Torchmark and Richey as third-party defendants to their counterclaims. See Alabama Defendants' Answer Affirmative Defense, And Counterclaims ("Alabama Defendants' Initial Counterclaims") at 38, attached as exhibit 10 to Defendants' Motion For Summary Judgment (Doc. # 52). The counterclaims asserted fraudulent inducement, fraudulent suppression, breach of fiduciary duty, tortious interference with business relations, breach of contract, estoppel and unjust enrichment.[6] The Alabama Defendants contended that their counterclaims arose out of the series of transactions and occurrences that formed the basis for UILIC's suit against them, and presented numerous common questions of law and fact. The Alabama Defendants also asserted that without Torchmark, complete relief could not be accorded parties already present in that action.

Richey and Torchmark objected to their joinder as third-party defendants in the Alabama action and on October 10, 2000, they filed a motion to dismiss. The Alabama court never ruled on that motion to dismiss because, according to counsel for Richey and Torchmark, the parties were discussing a stipulation of dismissal. See October 5, 2001 Hearing Transcript in Alabama case at 70–71, attached as Exhibit B to Affidavit Of Daniel C. Schulte In Opposition To Torchmark And Richey's Motion For Summary Judgment (Doc. # 58) filed April 12, 2002 ("Schulte Affidavit"). After the parties did not settle, Torchmark and Richey filed an answer to the counterclaims of the Alabama Defendants. See id.

---

**6.** The Alabama Defendants specifically alleged that UILIC had breached the Letter Agreement and fraudulently induced them to enter into and perform the Letter Agreement and to abandon their arrangement with alternative providers, including Security Benefit. In their claim of fraudulent suppression, the Alabama Defendants alleged that UILIC, Torchmark and Richey (through McCormick, Hagopian and others) had failed to disclose that UILIC would not improve its products and services or agree to pay additional compensation without an agreement that UILIC policies would not be replaced. See Alabama Defendants' Initial Counterclaims at 38, attached as Exhibit 10 to Defendants' Motion For Summary Judgment (Doc. # 52). In their claim for breach of fiduciary duty, the Alabama Defendants alleged that Richey had breached his fiduciary duty to W & R Financial by serving on the board of directors of both Torchmark and W & R Financial and making adverse decisions regarding W & R Financial while serving on its board. In support of their claim of tortious interference with business relations, the Alabama Defendants alleged that Richey and Torchmark had intentionally interfered with various contractual relations between W & R, Waddell & Reed Insurance Agency, Inc., Waddell & Reed Insurance Agency of Alabama, Inc. and UILIC by threatening legal action if W & R continued to exercise its contractual rights and causing or helping to cause UILIC to bring the Alabama action against W & R Financial and its affiliates.

Beginning in January of 2001, W & R and their investment advisors began to replace UILIC's policies with policies issued by Nationwide Insurance Company ("Nationwide"). On March 1, 2001, UILIC filed a second amended complaint in the Alabama litigation. See Second Amended Alabama Complaint, Exhibit D to Schulte Affidavit (Doc. # 58). On March 8, 2001, W & R and W & R Financial filed an answer and counterclaims and again included counterclaims against Richey and Torchmark, purportedly pursuant to Rule 13(h), Ala. R. Civ. P.[7] See Answer, Affirmative Defenses, And Amended Counterclaims ("Alabama Defendants Amended Counterclaims"), attached as Exhibit E to Schulte Affidavit (Doc. # 58). In the counterclaims, in addition to acts which they had asserted in their initial counterclaims, W & R and W & R Financial alleged certain facts pertaining to events that had occurred after the filing of their initial counterclaims in May of 2000. In particular, W & R and W & R Financial alleged that (1) Torchmark and its affiliates terminated W & R Investment as the investment adviser for Torchmark's general account assets and pension plan assets; (2) beginning in May of 2000 when UILIC filed suit in Alabama, UILIC introduced USA products which competed directly with the products which W & R distributed; (3) UILIC structured the USA products (including credits for certain transaction costs) so that they would be attractive replacements for UILIC products which W & R distributed;[8] and (4) UILIC never allowed W & R to distribute USA products. See Alabama Defendants Amended Counterclaims

¶¶ 47, 51–55. W & R and W & R Financial also alleged that based on Richey's breach of fiduciary duty to W & R Financial, UILIC had negotiated in bad faith with W & R to delay legal action until UILIC could file suit in Alabama and bring USA products to market in May of 2000. See id. ¶ 75. W & R and W & R Financial also alleged that Torchmark and Richey had intentionally interfered with various contractual relations between W & R and UILIC by (1) refusing to give W & R Financial a limited power of attorney to obtain a private letter ruling from the IRS to facilitate recapitalization of its stock, unless W & R altered its arrangement with UILIC; (2) threatening to terminate W & R Investment as investment adviser for Torchmark general account assets and pension plan assets and executing that threat in September 2000; and (3) threatening to institute legal action against W & R and carrying out that threat in May 2000. See Alabama Defendants Amended Counterclaims ¶ 82. UILIC, Torchmark and Richey never responded to these counterclaims.

Despite the dispute as to whether the Letter Agreement of July 8, 1999 was a stand-alone contract, an amendment to the PUA or something other than a binding or enforceable agreement, UILIC notified W & R on February 28, 2001, that it was exercising its right to terminate the PUA effective April 30, 2001. On April 5, 2001, the Alabama court granted partial summary judgment in favor of UILIC, ruling that regardless of the characterization of the Letter Agreement, UILIC had the right to terminate the Letter Agreement at will or to terminate the PUA on 60 days notice.[9] In terminating the PUA, UILIC

---

7. The counterclaims in response to the second amended complaint did not include any claims by Waddell & Reed Financial Services, Inc., Waddell & Reed Insurance Agency, Inc. and Waddell & Reed Insurance Agency of Alabama, Inc.

8. For example, UILIC and USA offered a 5 per cent credit on initial purchases to help offset surrender charges which policyholders might incur if they replaced UILIC policies which W & R distributed. See Alabama Defendants' Amended Counterclaims ¶ 54.

9. The Alabama court ruled that because the

cut off W & R's right to future compensation regarding UILIC policies that were in force before January 1, 2000. Shortly after the Alabama court's order, the parties informally stayed all discovery in the Alabama case and pursued settlement negotiations through July 2001.

On July 26, 2001, W & R and W & R Financial filed this suit against Torchmark, Richey, McCormick and Hagopian, who were not parties to the Alabama litigation. W & R Investment,[10] which was not a party to the Alabama case, joined W & R and W & R Financial as a plaintiff in this case. The Court collectively refers to all three plaintiffs as the "Kansas Plaintiffs." The Kansas Plaintiffs assert claims for violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 *et seq.*, breach of fiduciary duty, knowing participation in breach of fiduciary duty and interference with prospective business relations. Specifically, Count I alleges that from October 1997 through May 2001, Torchmark and Richey engaged in a pattern of racketeering activity designed to injure W & R, W & R Financial and W & R Investment. See Complaint (Doc. # 1) ¶¶ 60–61.[11] Count II alleges that Richey, McCormick and Hagopian breached their fiduciary duties as directors of W & R Financial. Count III alleges that Torchmark knowingly partici-

pated and induced Richey, McCormick and Hagopian to breach their duties as directors of W & R Financial. On Counts I, II and III, the Kansas Plaintiffs seek damages for (1) the decline in value of W & R Financial's interest in W & R Financial Services, Inc.; (2) losses which W & R and W & R Investment sustained on account of the delay in bringing a new competitive variable annuity product to market; (3) the loss of revenue which W & R sustained regarding UILIC policies that would have been replaced beginning in January 2000; (4) substantial litigation costs which W & R incurred in Alabama; and (5) fees which W & R Investment lost when Torchmark terminated it as investment advisor for Torchmark general accounts. See id. ¶¶ 62–64. Count IV alleges that Torchmark, Richey, McCormick and Hagopian intentionally interfered with the business relations of UILIC and W & R, and seeks compensation for the economic loss which W & R incurred from that interference.

On August 1, 2001, counsel for the Alabama Defendants filed a motion to withdraw and continue the trial, which was set for September 17, 2001 in Alabama. Two days later, on August 3, 2001, UILIC filed a third amended complaint, which re-asserted all but one of its claims from the second amended complaint and included

---

Letter Agreement did not contain a termination or duration provision, it would be terminable at will as a stand-alone contract. See Order On Motion For Partial Summary Judgment By UILIC at 2–3, attached as Exhibit G to Schulte Affidavit (Doc. # 58). Alternatively, the Alabama court noted that if the Letter Agreement was an amendment to the PUA, it would be terminable on 60 days notice as provided in the PUA. See id. Finally, if the Letter Agreement was not enforceable, UILIC would have the right to terminate the PUA on 60 days notice according to its express provisions. See id.

**10.** W & R Investment is a wholly-owned indirect subsidiary of W & R Financial. W & R

Investment is not a party to the Alabama litigation and no claim for damages was made in the Alabama litigation on its behalf.

**11.** The Kansas Plaintiffs assert that UILIC, W & R Financial and the common directors of W & R Financial and Torchmark constitute enterprises within the meaning of RICO and that continuously from October 1997 through May 2001, defendants actively conducted the affairs of these enterprises through multiple acts of mail and wire fraud, an act of extortion and one act of interstate travel in aid of the racketeering enterprises. See Complaint ¶¶ 60–61.

six new claims relating to replacement of UILIC policies that occurred after it terminated the PUA effective April 30, 2001. See Alabama Third Amended Complaint, attached as Exhibit J to Schulte Affidavit (Doc. # 58). On August 13, 2001, the Alabama trial court postponed the trial to February 19, 2002 and ordered the Alabama Defendants to retain new counsel. On September 5, 2001, new counsel filed notices of appearance, along with an answer that omitted the counterclaims which the Alabama Defendants had previously asserted against Torchmark and Richey but asserted substantially the same counterclaims against UILIC as those asserted in the answer to the second amended complaint. See Alabama Defendants' Answer, Affirmative Defenses And Counterclaims, attached as Exhibit K to Schulte Affidavit (Doc.# 58). Torchmark and Richey opposed any attempt to drop the counterclaims against them because W & R and W & R Financial had recently filed this case (asserting similar claims in their complaint here), and Torchmark and Richey did not want to defend the omitted counterclaims in the Kansas litigation. Torchmark and Richey therefore asked the Alabama court to strike the counterclaims which were asserted solely against UILIC, and it did so on September 21, 2001.[12]

On September 27, 2001, the Alabama Defendants filed a motion to dismiss without prejudice their counterclaims against Torchmark and Richey, asserting that those counterclaims were independent from and broader than their counterclaims against UILIC. See Motion For Leave To Dismiss Without Prejudice Counterclaims Against Torchmark Corporation And Ronald K. Richey at 2, attached as Exhibit N to Schulte Affidavit (Doc. # 58). On October 5, 2001, the Alabama court announced that it would let the Alabama Defendants drop their counterclaims against Torchmark and Richey if they agreed that the dismissal was with prejudice "on claims that were asserted or could have been asserted." Transcript of October 5, 2001 Hearing at 107, attached as Exhibit 23D to Defendants' Reply Appendix (Doc. # 64) filed May 2, 2002. On October 26, 2001, Waddell & Reed filed a supplemental and renewed motion to dismiss *without* prejudice.

On November 13, 2001, the Alabama Defendants filed a petition for writ of mandamus, asking the Alabama Supreme Court to require the trial court to recognize the answer and counterclaims which they had filed in response to UILIC's third amended complaint, and grant their motion to dismiss Torchmark and Richey without prejudice pursuant to Rule 41(a)(2), Ala. R. Civ. P. On January 12, 2002, the Alabama Supreme Court denied their petition.

Meanwhile, on December 7, 2001, Richey filed a motion for summary judgment in the Alabama case. On December 26, 2001, the Alabama court granted his motion, ruling that as a matter of law the motion for summary judgment was "due to be grant-

---

**12.** The Alabama court did not strike the Alabama Defendants' answer or affirmative defenses to UILIC's third amended complaint. See Order Filed Sept. 21, 2001 at 3, attached as Exhibit L to Schulte Affidavit (Doc. # 58). The procedural posture of the Alabama Defendants' counterclaims is not entirely clear. As to Torchmark and Richey, the Alabama court did not specifically order that the counterclaims which the Alabama Defendants had filed on March 8, 2001 were reinstated.

Based on the order and subsequent hearing transcripts, however, it appears that the Alabama court intended to reinstate the previously asserted counterclaims against those defendants. As to UILIC, the Alabama Defendants asked the Alabama court to recognize the counterclaims which they had filed on September 5, 2001, in response to UILIC's third amended complaint. The record does not reflect the Alabama court's ruling on that motion.

ed" and that even aside from the motion for summary judgment, the counterclaims against Richey warranted dismissal with prejudice. Order Filed December 26, 2001 at 3, attached as Exhibit 5 to Defendants' Motion For Summary Judgment (Doc. # 52). The judge noted that on several occasions the Alabama Defendants had assured him that regardless of his rulings, they would not submit evidence in support of any claim against Richey. See id. at 2.

On January 15, 2002, Torchmark filed a motion to dismiss with prejudice or in the alternative for summary judgment. Four days later, the Alabama court granted that motion on the ground that as a matter of law, the summary judgment motion was "due to be granted" and that—even aside from the motion for summary judgment—the counterclaims against Torchmark warranted dismissal with prejudice. Order Filed January 19, 2002 at 3, attached as Exhibit 7 to Defendants' Motion For Summary Judgment (Doc. # 52). The judge again noted that on several occasions the Alabama Defendants had assured him that regardless of his rulings, they would not submit evidence in support of any claim against Torchmark. See id. at 2.

In orders dated December 26, 2001 and January 19, 2002, the Alabama judge directed the clerk to enter final judgment in favor of Torchmark and Richey pursuant to Rule 54(b), Ala. R. Civ. P. The Alabama Defendants asked the court to reconsider that portion of both orders, but it refused to do so. On April 11, 2002, W & R and W & R Financial filed a motion to stay and for expedited appeal in the Alabama Supreme Court, asking it "to stay the res judicata effect of the summary judgment orders during the pendency of th[e] appeal." Memorandum In Support Of Motion For Stay And Expedited Appeal at 2, attached as Exhibit W to Schulte Affidavit (Doc. # 58). They also noted:

On March 6, 2002, Torchmark and Richey filed a Motion For Summary Judgment with the Kansas court asserting that the Kansas claims are barred by res judicata. While Waddell & Reed will contest the motion for summary judgment and continue to pursue its claims against the other two defendants in the Kansas action, Waddell & Reed should be allowed to prepare its case against all defendants until this appeal is resolved on the merits. Thus, unless a stay is granted, Waddell & Reed will be irreparably injured by its inability to pursue its claims against Torchmark and Richey in Kansas.

Id. at 26. The Alabama Supreme Court denied the motion for a stay on May 23, 2002, and on October 25, 2002, it affirmed the trial court rulings with regard to Torchmark and Richey. See Defendants' Notice Of Decision Of Alabama Court (Doc. # 75) filed October 28, 2002.

W & R Investment, the one Kansas Plaintiff which was not a defendant in the Alabama litigation, is related to both W & R Financial and W & R, who are Kansas Plaintiffs and who were Alabama Defendants. W & R Investment is an indirect, wholly-owned subsidiary of W & R Financial and a wholly-owned subsidiary of W & R. W & R Investment operates as a separate entity from W & R, and has separate assets, a separate board of directors and separate officers. It maintains corporate formalities such as holding of meetings and maintenance of minutes. W & R Investment is regulated by the Securities and Exchange Commission, but W & R is regulated by the National Association of Securities Dealers. The president of W & R Investment, Henry J. Herrmann, is president and chief investment officer of W & R Financial. Daniel Schulte, general counsel of W & R Investment, is vice president, general counsel and corporate secretary of

W & R Financial and general counsel for all W & R Financial affiliates.

As general counsel for W & R Financial and its affiliates, Schulte retained counsel to prepare the declaratory judgment action which W & R filed against UILIC in the District Court of Johnson County, Kansas on May 5, 2000. In a prior affidavit in this case, Schulte stated that he retained counsel to represent "the W & R parties" in the Alabama litigation. See Schulte Affidavit ¶ 6, attached as Exhibit 16 to Defendants' Motion For Summary Judgment. Schulte defined the term "W & R" as all affiliates of W & R Financial, including W & R Investment. See id. Schulte authorized counsel for the W & R entities to engage in settlement negotiations in the Alabama case. He also retained separate counsel to file the Kansas action and authorized the commencement of this litigation on behalf of the W & R entities.

On March 6, 2002, Torchmark and Richey filed a motion for summary judgment in this case, arguing that by virtue of the Alabama judgment, the doctrine of res judicata precludes plaintiffs' claims against them in this jurisdiction. The Kansas Plaintiffs argue that res judicata does not apply because the Alabama judgment was not on the merits and they could not have brought the instant claims in the Alabama action. The Kansas Plaintiffs also maintain that W & R Investment is not bound by the Alabama judgment because it was not a party to that action.

### Analysis

### I. Claims Of W & R and W & R Financial

As Alabama Defendants, W & R and W & R Financial asserted counterclaims against Torchmark and Richey. Torchmark and Richey argue that because the Alabama court entered judgments in their favor on those counterclaims, res judicata bars the claims of W & R and W & R Financial in this action.

The Full Faith and Credit Statute, 28 U.S.C. § 1738, requires a federal court to apply the preclusion law of the state in which the previous judgment was rendered. See *Marrese v. Am. Acad. Of Orthopaedic Surgeons*, 470 U.S. 373, 380, 105 S.Ct. 1327, 84 L.Ed.2d 274 (1985). In Alabama, "the elements of res judicata are: (1) a prior judgment on the merits; (2) rendered by a court of competent jurisdiction; (3) substantially the same parties involved in the prior case are involved in the current case; and (4) the same cause of action presented in both suits." *Ex parte Jefferson County*, 656 So.2d 382, 384–85 (Ala.1995); see *Lee L. Saad Constr. Co., Inc. v. DPF Architects, P.C.,* —— So.2d ——, 2002 WL 31664444, at *7 (Ala. Nov.27, 2002). If those four elements are present, any claim that was adjudicated or could have been adjudicated in the prior action is barred from further litigation. *Equity Res. Mgmt., Inc. v. Vinson*, 723 So.2d 634, 636 (Ala.1998). In this case, the parties disagree (1) whether the Alabama judgments were "on the merits," and (2) whether the claims which W & R and W & R Financial assert in this action could have been adjudicated in Alabama.

### A. Whether The Alabama Judgments Were "On The Merits"

The Alabama court granted summary judgment to Torchmark and Richey and under Alabama law, an order granting summary judgment is generally "on the merits" for purposes of res judicata. The Alabama Supreme Court has held:

A summary judgment acts as a judgment on the merits. *Robinson v. Holley*, 549 So.2d 1 (Ala.1989). A prior judgment in favor of the defendant bars the plaintiff from relitigating any matter that could have been litigated in the prior action. *McCorkle v. McElwey*, 576 So.2d 202 (Ala.1991). The [plaintiffs] are barred from litigating these same claims in state court, because the federal

court has previously entered a judgment on the merits. Any argument by the [plaintiffs] that the summary judgment was wrongfully entered should have been addressed by the [plaintiffs] in an appeal from that summary judgment. *Ex parte Jefferson County*, 656 So.2d at 385.[13] Plaintiffs do not cite a single Alabama case which questions this holding. Rather, they argue that the Alabama court based its decision on a procedural ground—their statements as Alabama Defendants that they would not present evidence against Torchmark and Richey at trial—and that its ruling therefore was not "on the merits." [14]

At least two federal courts have held that an order which grants summary judgment on an uncontested motion constitutes an adjudication "on the merits" for purposes of collateral estoppel or res judicata. See *In re Gottheiner*, 703 F.2d 1136 (9th Cir.1983) (collateral estoppel); *Solien v. Physicians Bus. Network, Inc.*, 22 F.Supp.2d 1237, 1239 (D.Kan.1998). In Gottheiner, the Ninth Circuit held that judgment on an uncontested summary judgment motion receives collateral estoppel effect when the party seeking to avoid the preclusive effect of the judgment "did not simply give up from the outset," but "actively participated in litigation on behalf of himself." 703 F.2d at 1140. Likewise, in Solien, the Honorable John W. Lungstrum held that a judgment on an uncontest-

ed motion for summary judgment had res judicata effect because plaintiff had been represented by counsel, participated in written and oral discovery, and appeared for the final pretrial conference. See 22 F.Supp.2d at 1240.

The Court agrees with Gottheiner and Solien. Counsel represented W & R and W & R Financial in the Alabama case and actively pursued their claims against Torchmark and Richey for more than a year, from May of 2000 through at least August of 2001. W & R and W & R Financial did not attempt to drop Torchmark and Richey until after the Alabama court had allowed them to retain new counsel and continue the trial.

Citing numerous cases from jurisdictions other than Alabama, plaintiffs maintain that summary judgment is not necessarily a judgment on the merits. See *Ruffin v. ITT Cont'l Baking Co.*, 636 F.Supp. 857 (N.D.Miss.1986); *Lucas v. County of L.A.*, 47 Cal.App.4th 277, 54 Cal.Rptr.2d 655 (1996); *Nat'l Heritage Corp. v. Mount Olive Mem. Gardens, Inc.*, 244 Ga. 240, 260 S.E.2d 1 (1979); *Downing v. Chi. Transit Auth.*, 162 Ill.2d 70, 204 Ill.Dec. 755, 642 N.E.2d 456 (1994); *Fed. Deposit Ins. Corp. v. Urbanizadora Altomar, Inc.*, 716 F.Supp. 701 (D.P.R.1989); *Johnston v. Fancher*, 447 F.Supp. 512 (W.D.Okla.1977); *Bushman v. Safeway Stores, Inc.*, 608 F.Supp. 232 (D.Nev.1985). None of these cases support plaintiffs' assertion that

13. Other courts have reached a similar conclusion. See, e.g., *Caballero–Rivera v. Chase Manhattan Bank*, 276 F.3d 85, 87 (1st Cir. 2002) (summary judgment constitutes final judgment on merits for purposes of res judicata); *King v. Hoover Group*, 958 F.2d 219, 222 (8th Cir.1992) (same).

14. Plaintiffs' position in this case is notably at odds with their position in the Alabama Supreme Court, where they argued that the trial court had erred in entering judgment "on the merits" in favor of Torchmark and Richey. Memorandum in Support Of Motion For Stay

And Expedited Appeal Of Counterclaimants/Appellants Waddell & Reed, Inc. And Waddell & Reed Financial, Inc. at 13, attached as Exhibit W to Schulte Affidavit (Doc. # 58). Plaintiffs also argued that the Alabama Supreme Court should stay the res judicata effect of the trial court rulings, so that Torchmark and Richey could not claim the benefit of a "judgment 'on the merits' that should never have been entered." Id. at 26–27; see id. at 27 ("If a stay is not entered, the summary judgments will have res judicata effect until this appeal can be heard.").

summary judgment based on failure to prosecute is an adjudication other than on the merits.[15] Therefore, for reasons stated above, the summary judgment orders in the Alabama action constitute adjudications "on the merits."

■■ Even if these orders were not otherwise on the merits, the Alabama trial court specifically ordered that the claims against Torchmark and Richey were dismissed with prejudice. See Order Filed Jan. 19, 2002 at 3; Order Filed Dec. 26, 2001 at 3. Under Alabama law, a dismissal with prejudice operates as an adjudication "on the merits" for purposes of res judicata. See *Gonzalez, LLC v. DiVincenti,* ——

So.2d ——, 2002 WL 31045207 (Ala. Sept.13, 2002); *Parmater v. Amcord, Inc.,* 699 So.2d 1238, 1241 (Ala.1997); *Smith v. Union Bank & Trust Co.,* 653 So.2d 933 (Ala.1995); *Hammermill Paper Co. v. Montreal Boyette Sandlin Day,* 336 So.2d 166 (Ala.1976). In the orders of dismissal, the Alabama court did not specifically refer to Rule 41(b), Ala. R. Civ. P,[16] which addresses involuntary dismissals for failure to prosecute, or to the motions to dismiss without prejudice that the Alabama Defendants had previously filed. It did refer to prior oral motions by Torchmark and Richey to dismiss for failure to prosecute.[17] See Order Filed Jan. 19, 2002 at 2; Order Filed Dec. 26, 2001 at 2. The

---

**15.** Johnston and FDIC do not involve summary judgment orders, but dismissals. See *Johnston,* 447 F.Supp. at 514; *FDIC,* 716 F.Supp. at 703. The court in Bushman gave a previous summary judgment order res judicata effect, and that case does not support plaintiffs' position. See *Bushman,* 608 F.Supp. at 237. Plaintiffs' reliance on Ruffin, Downing, Lucas and National Heritage is equally misplaced. Downing, Lucas and National Heritage merely stand for the proposition that where the basis of the summary judgment is a statute of limitations, lack of jurisdiction, failure to state a claim under federal law or a dilatory plea (challenging jurisdiction or venue or a plea in abatement), summary judgment is not necessarily a judgment on the merits. See *Downing,* 204 Ill. Dec. 755, 642 N.E.2d at 460; *Lucas,* 54 Cal. Rptr.2d at 663; *National Heritage,* 260 S.E.2d at 2. Finally, Ruffin stands for the proposition that claims dismissed "with prejudice" have res judicata effect, which supports a finding of res judicata in this case. See *Ruffin,* 636 F.Supp. at 858.

**16.** Rule 41(b) provides:
Involuntary Dismissal: Effect Thereof. For failure of the plaintiff to prosecute or to comply with these rules or any order of court, a defendant may move for dismissal of an action or of any claim against the defendant. Unless the court in its order for dismissal otherwise specifies, a dismissal under this subdivision and any dismissal not provided for in this rule, other than a dismissal for lack of jurisdiction, for improper venue, or for

failure to join a party under Rule 19, operates as an adjudication upon the merits.
Rule 41(b), Ala. R. Civ. P., is identical to Rule 41(b) of the Federal Rules of Civil Procedure.

**17.** In its orders, the Alabama court explicitly overruled the motions to dismiss without prejudice which the Alabama Defendants had filed under Rule 41(a), Ala. R. Civ. P. See Order Filed Jan. 19, 2002 at 2; Order Filed Dec. 26, 2001 at 2. The Court quoted the following comment to Rule 41(a), Ala. R. Civ. P.:

The purpose of Rule 41(a) is to facilitate voluntary dismissal but to limit them to an early stage of the proceedings before issue is joined. *Harvey Aluminum, Inc. v. American Cyanamid Co.,* 203 F.2d 105 (2d Cir. 1953), *cert. denied,* 345 U.S. 964, 73 S.Ct. 949, 97 L.Ed. 1383. Once issue has been joined, by answer or by motion for summary judgment, voluntary dismissal can only be upon court order, and the court is given broad powers to prevent harassment of or inconvenience to the defendant by an arbitrary dismissal at this advanced stage of the case.
Exhibit 5 to Defendants' Motion For Summary Judgment (Doc. # 52). In addition, the Court referenced its prior statements on the same issue:
Waddell & Reed argues that it is entitled to amend its counterclaims to drop Torchmark and Richey as counter defendants because [UILIC] timely filed an amended complaint 45 days prior to the first trial

Alabama court clearly intended to dismiss with prejudice the claims against Torchmark and Richey. For this reason, as well as the reasons stated above, the Alabama judgment against W & R and W & R Financial is "on the merits" for purposes of res judicata.

## B. Whether Plaintiffs' Claims "Could Have Been" Adjudicated In Alabama

The Kansas Plaintiffs assert that their claims in this action could not have been adjudicated in Alabama, and that principles of res judicata therefore do not apply. More specifically, they argue that (1) procedurally, the claims could not have been brought under Rule 13(h), Ala. R. Civ. P., because UILIC was not a party, and could not have been a party, to such claims; and (2) at the time they filed their initial counterclaim in Alabama, the claims which they assert here had not matured.

## 1. Whether W & R and W & R Financial Were Procedurally Barred From Asserting Their Claims In Alabama

▮▮▮ Rule 13(h), Ala. R. Civ. P., provides that "[p]ersons other than those made parties to the original action may be made parties to a counterclaim or cross-

claim in accordance with the provisions of Rules 19 and 20." W & R and W & R Financial do not dispute that under Rule 13(h) Torchmark and Richey were proper counterclaim defendants in Alabama on three of the counterclaims which the Alabama Defendants asserted in that action. Torchmark and Richey were proper defendants on those three counterclaims because UILIC—the Alabama plaintiff—was also a party to such counterclaims. See Alabama Defendants' Initial Counterclaims I, II and V (asserted against Torchmark, Richey and UILIC); *Fed. Deposit Ins. Corp. v. Bathgate*, 27 F.3d 850, 873 (3d Cir.1994) (counterclaim or cross-claim under Rule 13(h) may not be directed solely against non-party to original action but must involve at least one existing party) (citing 6 Charles Alan Wright et al., Federal Practice & Procedure: Civil 2d § 1435, at 270–71 (1990)); *Republic Nat'l Bank v. Hales*, 75 F.Supp.2d 300, 310 n. 8 (S.D.N.Y.1999) (same); *Various Mkts., Inc. v. Chase Manhattan Bank, N.A.*, 908 F.Supp. 459, 470–71 (E.D.Mich.1995) (same). The parties vigorously disagree whether the claims asserted in this action could have been brought as counterclaims against Torchmark and Richey in Alabama under Rule 13, Ala. R. Civ. P.[18] For pur-

---

setting. The Court agrees with Counsel for Torchmark and Richey, however, that the filing of the Amended Complaint by [UILIC] on August 3, 2001 had nothing to do with Torchmark and Richey. Neither Torchmark nor Richey is a plaintiff in this action and they did not join in the filing of the Amended Complaint. Furthermore, the Amended Complaint did not interject any new issues related to Torchmark or Richey. In fact, Waddell & Reed admits in its opposition that the counterclaim is identical to its previous counterclaim insofar as the claims made against United Investors. Therefore, Waddell & Reed's argument is not well taken.

.... The Court further finds that allowing the Second Amended Counterclaims in this instance would amount to "harassment of

or inconvenience" to United Investors, Torchmark and Richey at this advanced stage of the case. Richey and Torchmark have been forced to expend substantial amounts of time and money to defend against these claims in this Court, and should not be dismissed from this case over their objection in such a way as to leave them open to the possibility that these claims would be litigated anew in another forum or at another time.

Order Filed September 21, 2001 at 3, Exhibit L to Schulte Affidavit (Doc. # 58).

**18.** Torchmark and Richey argue that the Kansas claims could have been brought in Alabama, and that in fact, they were compulsory counterclaims in Alabama under Rule 13(a), Ala. R. Civ. P. Rule 13(a), however, applies only to counterclaims against an opposing

poses of res judicata, however, the Court is not restricted to a specific rule—it simply asks whether the claims in this case could have been asserted in the prior action. Because the Kansas Plaintiffs properly joined Torchmark and Richey as parties to three of their counterclaims in Alabama, Rule 18(a), Ala. R. Civ. P.,[19] provides the answer: a party asserting a claim to relief as an original claim, counterclaim, cross-claim or third-party claim "may join, either as independent or as alternate claims, as many claims either legal or equitable, or both, as the party has against an opposing party." Under Rule 18(a), the Kansas Plaintiffs could have brought additional claims against Torchmark and Richey without also naming UILIC as a party. See Advisory Committee Comments on Ala. R. Civ. P. 18(a) (provided party is properly joined under Rules 13, 14, 19, 20 and 22, no misjoinder of claims is possible). Even though Rule 18(a) did not require them to assert additional counterclaims against Torchmark and Richey, the Court is required to give res judicata effect to the Alabama judgment to the extent that the claims which the Kansas Plaintiffs asserted in Alabama are part of the "cause of action" which they assert here. See *Turner v. Green*, 571 So.2d 1104, 1106 (Ala. 1990) (because plaintiff could have asserted claim in prior suit under Rule 18, Ala.

R. Civ. P., claim barred under doctrine of res judicata); *Bogatin v. Grubbs*, 392 So.2d 1209, 1212 (Ala.Civ.App.1981) (same); *Fox v. Maulding*, 112 F.3d 453, 459 (10th Cir.1997) (failure to assert RICO claim in prior state case barred assertion of claim in federal court under res judicata principles); see also Charles Alan Wright & Mary Kay Kane, Federal Practice & Procedure: Federal Practice Deskbook, § 83 (2002) (Rule 18 does not compel joinder, but doctrine of res judicata prevents "splitting" cause of action); James Wm. Moore, 4 Moore's Federal Practice, § 18.02[3] (3d ed.2002) (joinder of additional claims is permissive, but doctrine of claim preclusion may essentially require claimant to assert all transactionally related claims in one case).

W & R and W & R Financial maintain that Torchmark and Richey were not proper counterclaim defendants in Alabama because in order to assert counterclaims against non-parties under Rule 13(h), Ala. R. Civ. P., the original plaintiff also must be a party to such claims. W & R and W & R Financial argue that because UILIC (the original plaintiff in Alabama) is not and cannot be a party to the claims asserted in this action, such claims are not barred under res judicata principles.[20] See Rule 13(h) ("Persons other than those made parties to the original

---

party that has already asserted a claim in the action. See Ala. R. Civ. P. 13(a) ("A pleading shall state as a counterclaim any claim which at the time of serving the pleading the pleader has against any opposing party, if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim and does not require for its adjudication the presence of third parties of whom the court cannot acquire jurisdiction."). Because Torchmark and Richey did not assert claims against the Kansas Plaintiffs in Alabama, Rule 13(a) does not apply.

19. Except for a reference to maritime claims in Rule 18(a) of the Federal Rules of Civil Procedure, Rule 18(a) of the Alabama Rules of Civil Procedure mirrors its federal counterpart.

20. UILIC could not be a defendant on the instant RICO claim because the Kansas Plaintiffs assert that UILIC is one of the alleged "enterprises." See *Bd. Of County Comm'rs v. Liberty Group*, 965 F.2d 879, 885 (10th Cir.) (under 18 U.S.C. § 1962(c), the "person" and the "enterprise" engaged in racketeering activities must be different entities), *cert. denied*, 506 U.S. 918, 113 S.Ct. 329, 121 L.Ed.2d 247 (1992). In addition, the fiduciary duty claims which the Kansas Plaintiffs assert against Richey, McCormick and Hagopian are based on the latter's status as common directors of both Torchmark and W & R Financial. Logically those claims cannot be asserted against UILIC.

action may be made parties to a counterclaim or cross-claim in accordance with the provisions of Rule 19 and 20."); *Bathgate,* 27 F.3d at 873 (counterclaim or cross-claim under Rule 13(h) may not be directed solely against non-party to original action, but must involve at least one existing party). The conduct of W & R and W & R Financial in Alabama, however, belies their present assertion that they could not pursue counterclaims against Torchmark and Richey without also naming UILIC as a defendant on each counterclaim. The Alabama Defendants purportedly asserted Counterclaim III, for breach of fiduciary duty by Richey, under Rule 13(h). Likewise, they purportedly asserted Counterclaim IV, for tortious interference with business relations by Torchmark and Richey, under Rule 13(h). Such claims may have been mislabeled as "counterclaims," but they nevertheless could have been brought—and were brought—against Torchmark and Richey. The Alabama court did not explicitly identify what rule authorized W & R and W & R Financial to assert claims against Torchmark and Richey without also naming UILIC, and apparently no one asked it to do so. As explained above, however, because Torchmark and Richey were proper parties under Counterclaims I, II

and V, which were also asserted against UILIC, the Alabama court could have allowed W & R and W & R Financial to assert additional claims against Torchmark and Richey under Rule 18(a), Ala. R. Civ. P. To the extent that the Alabama court may have erred in allowing them to assert "counterclaims" against Torchmark and Richey without also naming UILIC on each counterclaim, the Kansas Plaintiffs invited such error and they cannot now complain. See *Neal v. Neal,* —— So.2d ——, 2002 WL 31002917, at *17 (Ala. Sept.6, 2002) (party cannot win reversal on error that it has invited trial court to commit). Their technical procedural objections, if any, should have been made to the Alabama Supreme Court. Because the Alabama court permitted the Kansas Plaintiffs to assert claims against Torchmark and Richey without also naming UILIC on each counterclaim, this Court rejects the argument that Rule 13(h), Ala. R. Civ. P., precluded the Kansas Plaintiffs from asserting claims directed solely against Torchmark and Richey.

In summary, the Court concludes that the Alabama Rules of Civil Procedure did not preclude W & R and W & R Financial from asserting against Torchmark and Richey the claims which they now assert in this litigation.[21]

---

**21.** In a brief on Torchmark and Richey's motion to dismiss, W & R and W & R Financial did not claim that they were procedurally barred from asserting additional claims against Torchmark and Richey in Alabama. Rather, they explained that their decision to file suit in the District of Kansas was strategic:

An impartial examination of the status of the Alabama state court litigation … reveals why W & R Financial and W & R, Inc. did not choose to pursue their RICO claim in Alabama state court. First, they would have had to move to add W & R Investment as a third party counterclaimant in the Alabama litigation. Second, they would have had to move to add Defendants Harold T. McCormick ("McCormick") and Louis T.

Hagopian ("Hagopian") as new third party counterclaim defendants. Third, they would have had to move to amend the counterclaim to add a RICO claim against third parties not originally part of the main action. Under these circumstances, Plaintiffs were entirely justified in filing a separate RICO action in United States District Court for the District of Kansas.

Plaintiffs' Sur–Reply To Defendants' Reply To Plaintiffs' Brief In Opposition To Motion For Abstention Or Stay (Doc. # 38) filed November 16, 2001 at 3. In essence, plaintiffs argued that adding a RICO claim in Alabama would have required the addition of three non-parties—not that they were procedurally barred from asserting the claim. In addressing whether an Alabama judgment in favor of

### 2. Whether Plaintiffs' Claims Had Matured At The Time They Filed Initial Alabama Counterclaims

W & R and W & R Financial argue that some of their claims in this case were not mature when they filed their initial counterclaims in Alabama, and that res judicata does not apply because immature claims are not compulsory counterclaims in Alabama under Rule 13(a). See Plaintiffs' Memorandum In Opposition To Motion For Summary Judgment (Doc. # 57) filed April 12, 2002 at 20–21. As explained above, because Torchmark and Richey did not assert claims against the Alabama Defendants, Rule 13(a) does not apply. See supra note 18. Setting aside the compulsory counterclaim principles of Rule 13(a), W & R and W & R Financial essentially argue that res judicata does not apply because they could not have brought in the Alabama case the claims which they assert in this case.

■ A claimant generally does not have to amend its pleadings to assert claims that arise after the filing of its initial complaint or counterclaim. See *Manning v. City of Auburn*, 953 F.2d 1355, 1360 (11th Cir.1992); see also Charles Alan Wright, Arthur R. Miller, Edward H. Cooper, 18 Federal Practice & Procedure: Juris 2d § 4409, at 213 (2d ed.2002) (filing of amended complaint to add claims that could not have been asserted in original complaint is not mandatory); *Mitchell v. City of Moore, Okla.*, 218 F.3d 1190, 1202 (10th Cir.2000) (doctrine of claim preclusion does not necessarily bar plaintiffs from litigating claims based on conduct that occurred after initial complaint was filed). The Eleventh Circuit has explained:

... we do not believe that the res judicata preclusion of claims that "could

have been brought" in earlier litigation includes claims which arise after the original pleading is filed in the earlier litigation. Instead, we believe that, for res judicata purposes, claims that "could have been brought" are claims in existence at the time the original complaint is filed or claims actually asserted by supplemental pleadings or otherwise in the earlier action.

*Manning*, 953 F.2d at 1360 (footnote omitted).

■ In contrast to amendments to add new *claims*, however, amendments to add *damages* which accrue after the initial complaint or counterclaim are mandatory if the additional damages arise from the cause of action asserted in the initial complaint or counterclaim. See *Ohio–Sealy Mattress Mfg. Co. v. Sealy, Inc.*, 669 F.2d 490, 494 (7th Cir.) (new cause of action accrues for damages caused by defendant's *post-verdict* antitrust conduct) (citing *Lawlor v. Nat'l Screen Serv. Corp.*, 349 U.S. 322, 75 S.Ct. 865, 99 L.Ed. 1122 (1955)), *cert. denied*, 459 U.S. 943, 103 S.Ct. 257, 74 L.Ed.2d 201 (1982); see also *Northwestern Fin. Group, Inc. v. County of Gaston*, 110 N.C.App. 531, 430 S.E.2d 689, 694–95 (1993) (res judicata precludes subsequent claim for damages if any portion of damages incurred before first action commenced). Accordingly, the dispositive question is whether the claims asserted by the Kansas Plaintiffs—for violation of RICO, breach of fiduciary duty, knowing participation in breach of fiduciary duty and tortious interference claims—are part of the same causes of action as ones which they previously asserted in Alabama.

■ Under Alabama law, to determine whether the claims asserted in two cases are part of the same cause of action,

Torchmark and Richey would bar W & R and W & R Financial from asserting claims in Kansas, the Kansas Plaintiffs relied solely on

their argument that a dismissal with prejudice over their objection is not a decision "on the merits." Id. at 5 n. 1.

the Court applies the same evidence test, i.e. "whether the same evidence substantially supports both actions." *Gonzalez, LLC v. DiVincenti,* — So.2d ——, 2002 WL 31045207, at *8 (Ala. Sept.13, 2002); see *Garris v. S. Ala. Prod. Credit Ass'n,* 537 So.2d 911, 914 (Ala.1989) (regardless of form of action, issue is same for res judicata purposes when substantially same evidence supports both actions). "Res judicata applies not only to the exact legal theories advanced in the prior case, but to all legal theories and claims arising out of the same nucleus of operative facts." *Wesch v. Folsom,* 6 F.3d 1465, 1471 (11th Cir.1993), cert. denied sub nom., *Sinkfield v. Wesch,* 510 U.S. 1046, 114 S.Ct. 696, 126 L.Ed.2d 663 (1994); see *Smith v. Scott Paper Co.,* 620 So.2d 976, 982 (Ala.1993). In their initial memorandum, Torchmark and Richey argue that this test is satisfied.

See Defendants' Motion For Summary Judgment at 16–21. The Kansas Plaintiffs have not contested defendants' assertion on this critical question. For this reason and because the Alabama counterclaims are substantially similar to the claims asserted in this case, the Court agrees that the claims asserted in Alabama and those asserted here constitute one "cause of action." [22]

To a large extent, paragraphs 1 through 55 of the Kansas complaint mirror the factual allegations of the Alabama counterclaims. Also, each of the four counts in the Kansas complaint incorporates paragraphs 1 through 55 of that complaint, and depends substantially on the following allegations, which W & R and W & R Financial litigated for some 14 months in Alabama:

| Allegation | Kansas Complaint (7–26–01) ¶ s | Alabama Counterclaim (5–26–00) ¶ s | Alabama Amended Counterclaim (3–8–01) ¶ s |
|---|---|---|---|
| In April 1999, Torchmark and Richey secretly negotiated an agreement with USA for the development of a new variable product that would be distributed by USA but not by W & R | 21 | not included | 65–66 |
| The July 8, 1999 Letter Agreement was a binding contract. | 26–38 | 33–38 | 32–47 |

**22.** In the context of defendants' motion for the Court to abstain under *Colo. River Water Conserv. Dist. v. United States,* 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976), this Court noted:

The two cases also involve substantially the same issues. Both cases involve the various compensation agreements between UILIC and W & R, the enforceability of the Letter Agreement, the representations by UILIC and W & R during the negotiation of the various compensation agreements, and Richey's involvement and control over W & R Financial. In the Alabama case, UILIC asserts claims for breach of contract, conversion, and tortious interference with contractual relations and the Alabama

Defendants assert claims for fraudulent inducement, fraudulent suppression, breach of fiduciary duty, tortious interference with business relations, breach of contract, estoppel and unjust enrichment. The Kansas case includes a RICO claim against Torchmark, but that claim arises from many of the same facts as the claims asserted in the Alabama case. The scope of the Kansas claims are broader than the Alabama ones, but both cases nevertheless involve litigation of substantially the same underlying dispute—the negotiation and execution of a compensation agreement between UILIC and Waddell & Reed.
*Waddell & Reed Fin., Inc. v. Torchmark,* 180 F.Supp.2d 1235, 1240 (D.Kan.2001).

| | | | |
|---|---|---|---|
| In July 1999, Torchmark wrongfully induced W & R to continue its relationship with UILIC and to abandon its arrangement with Security Benefit Life | 22–26 | 29–35, 42–47 | 57–62, 65–71 |
| Richey breached his fiduciary duty to W & R Financial by serving as a director for both W & R Financial and Torchmark and making decisions adverse to W & R Financial's interests. | 9–13, 21, 28, 30, 32–33, 39, 42–55, 67–68 | 57–61 | 73–77 |
| Torchmark and Richey did not disclose to W & R that absent W & R's agreement not to replace UILIC policies, UILIC would not agree to pay additional compensation. | 34, 37 | 49–55 | 57–62, 64 |
| Richey interfered with the contracts between W & R and UILIC. | 72–75 | 63–70 | 79–86 |
| Torchmark and Richey interfered with the contracts/business relationship between W & R and UILIC by threatening and instituting legal action against W & R. | 39, 56, 71 | 39–40, 63–70 | 51, 82 |
| In September 2000, Torchmark and Richey interfered with the contracts/business relationship between W & R and UILIC by terminating W & R Investment as investment advisor. | 41, 56, 71 | not included | 51, 82 |
| After the Alabama case was filed, UILIC employees interfered with the W & R sales force in an effort to disrupt their relationships with W & R and prevent the sale of competitive variable products by Nationwide | 40 | not included | 52–55 |

██ As explained above, because res judicata principles do not require a party to amend its pleadings to assert supplemental claims that arise after its initial complaint or counterclaim, the relevant cutoff date for res judicata purposes is May 24, 2000—the date when W & R and W & R Financial filed their initial counterclaims in Alabama.[23] W & R and W & R Financial assert that the following events had not occurred when they filed their initial counterclaims in Alabama: (1) Torchmark had not terminated W & R Investment as the investment advisor for Torchmark general accounts;[24] (2) UILIC employees had not interfered with the W & R sales force in an effort to disrupt their relationships with W & R and prevent the sale of competitive variable products by Nationwide;[25] and (3) the Alabama Defen-

23. As explained elsewhere in this order, claims which accrue after the initial complaint or counterclaim are barred if they are actually asserted in the first action. See *Equity Res. Mgmt.*, 723 So.2d at 636; *Manning*, 953 F.2d at 1359 (claims that "could have been brought" are claims in existence when original complaint is filed or claims actually asserted by supplemental pleadings).

24. That termination occurred in September of 2000, see Complaint ¶¶ 41, 64, 68, and forms part of the damage claims in Count I (violation of RICO), Count II (breach of fiduciary duty) and Count III (knowing participation in breach of fiduciary duty).

25. This interference occurred sometime after UILIC filed the Alabama case in May of 2000, see Complaint ¶ 40, and is identified as one of several predicate acts under RICO. See id. ¶ 60. It is not linked to the damage claims of W & R, which allegedly suffered injury on the RICO claim. See id. ¶ 63 (injury to W & R includes three-month delay in bringing new competitive variable product to market, loss of revenue for UILIC policies that would have been replaced by Security Benefit policies be-

dants had not incurred substantial litigation costs in the Alabama case.[26] All of these events relate to the computation of damages, however, and not the accrual of a new and independent cause of action.

■ A difference in damages is not grounds for distinguishing two causes of action for res judicata purposes. *Robinson v. Holley*, 549 So.2d 1, 2 (Ala.1989); see *id.* (cause of action grows out of wrongful action and not out of various forms of damages that may flow from wrongful act); see also *Estate of Young v. Williams*, 810 F.2d 363, 365 (2d Cir.1987) (different requests for relief do not limit scope of res judicata). Despite the fact that additional *damages* may have accrued after W & R and W & R Financial filed their counterclaims in Alabama, the issue is whether their *claims* or *causes of action* accrued after they filed their initial counterclaims. The Kansas Plaintiffs have not explained how any of the three categories of damages relate to the accrual of a claim or cause of action that they assert in this

case. Nor have they argued that any causes of action in the Kansas complaint accrued after they filed their initial counterclaims in Alabama.[27] As explained above, all four counts of the Kansas complaint are part of the causes of action asserted in Alabama. Accordingly, the claims which W & R and W & R Financial assert in this case are barred under res judicata principles.

The three additional categories of damages are barred for other reasons as well.

■ As to the termination of W & R Investment as investment advisor for Torchmark general accounts, W & R and W & R Financial included this allegation in their amended counterclaims in Alabama. See Alabama Defendants' Amended Counterclaims ¶¶ 51, 82. Because W & R and W & R Financial asserted this "claim" in Alabama, they cannot reassert it in this action. See *Equity Res. Mgmt.*, 723 So.2d at 636; *Manning*, 953 F.2d at 1359 (claims that "could have been brought" are claims

ginning in January 2000 and substantial litigation costs in Alabama).

**26.** The Alabama Defendants incurred these costs from May of 2000 through 2002, see Complaint ¶¶ 63, 68, and these costs form the basis for the damage claims in Count I (violation of RICO), Count II (breach of fiduciary duty) and Count III (knowing participation in breach of fiduciary duty).

**27.** Most of the dated factual allegations in the Kansas complaint (48 of 50 paragraphs) involve conduct which occurred before the Alabama Defendants filed their initial counterclaims. See Complaint ¶¶ 6–55. As to the RICO claim, only three of 63 alleged predicate acts involve conduct which occurred after the Alabama Defendants filed their initial counterclaims: (1) on July 11, 2000, Hagopian and McCormick resigned as directors of W & R Financial; (2) on April 30, 2001, UILIC prepared a Form N–4 filing; and (3) on May 2, 2001, McWhorter sent a letter to W & R Investment advisors. See Exhibits A–D to Complaint. The Court need not pinpoint an

exact accrual date for each count, but all of the Kansas Plaintiffs' claims had accrued by May 5, 2000—when UILIC filed suit in Alabama. See *Bath v. Bushkin, Gaims, Gaines & Jonas*, 913 F.2d 817, 820 (10th Cir.1990) (RICO cause of action accrues when plaintiff discovers, or reasonably should have discovered, existence and source of injury and that injury is part of pattern), overruled in part on other grounds *Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson*, 501 U.S. 350, 111 S.Ct. 2773, 115 L.Ed.2d 321 (1991); K.S.A. § 60–513 (cause of action accrues when act giving rise to cause of action first causes substantial injury or, if fact of injury is not reasonably ascertainable until some time after initial act, when the fact of injury becomes reasonably ascertainable to injured party); see also *Mynatt v. Collis*, —— Kan. ——, 57 P.3d 513, 524 (2002) (action for breach of fiduciary duty governed by limitations period of K.S.A. § 60–513); K.S.A. § 60–513(a)(4) (limitations period of K.S.A. § 60–513 applies to action for injury to rights of another, not arising on contract, and not otherwise enumerated in statute).

in existence when original complaint is filed or claims actually asserted by supplemental pleadings). In any event, this claim primarily involves W & R Investment. As explained below, W & R Investment is not barred from asserting this claim because it was not a party to the Alabama litigation.

The Kansas Plaintiffs also allege that after UILIC filed the Alabama litigation, its employees interfered with the W & R sales force in an effort to disrupt their relationships with W & R and prevent the sale of competitive variable products by Nationwide. See Complaint ¶ 40 ("After the filing of the Alabama litigation, United Investors' employees have telephoned and corresponded with the W & R sales force in an effort to disrupt their relationship with W & R and prevent the sale of competitive variable products issued by another insurance company."). Plaintiffs rely on this allegation to establish a predicate act of mail fraud, see Complaint ¶ 60, Exhibit A, and not an independent claim. Moreover, W & R and W & R Financial raised a similar claim in Alabama. In their amended counterclaims of March, 2001, W & R and W & R Financial alleged that after commencement of the Alabama case in May of 2000, Torchmark and Richey and others engaged in an effort to prevent the sale of competitive variable annuity policies. See Alabama Defendants' Amended Counterclaims ¶¶ 52–55. The allegations in the Alabama counterclaims could easily encompass the assertions in paragraph 40 of the Kansas complaint. W & R and W & R Financial are therefore barred from seeking damages from such conduct in this case. See *Equity*

*Res. Mgmt.*, 723 So.2d at 636; *Manning*, 953 F.2d at 1359.

The Kansas Plaintiffs also allege that they incurred substantial litigation costs in the Alabama action, presumably referring to attorneys' fees and other litigation expenses. Though the precise amount was uncertain when W & R and W & R Financial filed their initial counterclaims in Alabama, they had already retained counsel and knew when they filed their counterclaims that they had sustained damages for attorneys fees, litigation expenses and court costs. Indeed, W & R and W & R Financial sought recovery of their fees and costs in the Alabama action. See Alabama Defendants' Initial Counterclaim at pp. 31, 33, 35, 36, 38.[28]

For these reasons, the Court sustains defendants' motion for summary judgment on the claims which W & R and W & R Financial assert against Torchmark and Richey in this case.

## II. Claims Of Waddell & Reed Investment

W & R Investment argues that because it was not a party to the Alabama action, the Alabama judgment does not bar any of its claims against Torchmark and Richey. Judgments in a prior case may bind nonparties where (1) the nonparty was in privity with a party to the prior action or (2) a party to the prior action adequately represented the nonparty's interests. See *Parmater v. Amcord, Inc.*, 699 So.2d 1238, 1241 (Ala.1997); *West v. City of Mobile*, 689 So.2d 14, 16 (Ala.1997); *Century 21 Preferred Props., Inc. v. Ala. Real Estate Comm'n*, 401 So.2d 764, 770

28. Likewise, the Kansas Plaintiffs state that they intend to seek leave to amend their Kansas complaint to add a claim for damages based on the verdict against W & R and W & R Financial in the Alabama litigation ($50 million). See Plaintiff's Memorandum In Op- position To Motion For Summary Judgment (Doc. # 57) at 5. That issue is not presently before the Court, but such damages do not appear to give rise to a new claim or cause of action.

(Ala.1981). Torchmark and Richey assert that the Alabama judgment binds W & R Investment under both theories.

## A. Privity

■ Torchmark and Richey argue that W & R Investment was in privity with W & R Financial—its corporate parent and sole shareholder. A "near alter ego" relationship is sufficient to establish privity between two related corporations. *Robinson v. Volkswagenwerk AG,* 56 F.3d 1268, 1275 (10th Cir.1995); *ORI, Inc. v. Lanewala,* 147 F.Supp.2d 1069, 1083–84 (D.Kan. 2001); see *Hart v. Yamaha–Parts Distribs., Inc.,* 787 F.2d 1468, 1472–73 (11th Cir.1986) (stockholders not in privity with corporations unless they are alter egos); see also Restatement (Second) of Judgments § 51 (1982) (second action barred against party vicariously responsible for conduct of party in original action). Defendants have shown that W & R Investment is wholly owned by W & R Financial, that the president of W & R Investment holds positions with W & R Financial and that all W & R entities share common counsel. Such connections are insufficient by themselves, however, to establish as a matter of law a "near alter ego relationship" between W & R Investment and either W & R or W & R Financial. Accordingly, the Court overrules defendants' motion for summary judgment on this issue.

## B. Adequate Or Virtual Representation

■ In the alternative, Torchmark and Richey argue that in the Alabama action W & R and W & R Financial were virtual representatives of W & R Investment. To show privity by virtual representation, defendants must show that at the time of the Alabama suit, W & R and W & R Financial were so closely aligned with the interests of W & R Investment as to be its virtual representatives. See

*West,* 689 So.2d at 16. The strict requirements for virtual representation ensure that the relationship between the party and the non-party "is not so attenuated as to violate due process." *Whisman v. Ala. Power Co.,* 512 So.2d 78, 82 (Ala.1987).

■ To support a finding of virtual representation, the Court ordinarily must find that the parties in the earlier action were in some sense proper agents for the latter parties so as to support preclusion of the latter claim. See *Tice v. Am. Airlines, Inc.,* 162 F.3d 966, 971 (7th Cir.1998), *cert. denied,* 527 U.S. 1036, 119 S.Ct. 2395, 144 L.Ed.2d 795 (1999). Such an agency relationship may arise, for example, where the party in the first suit had some obligation to safeguard the interests of the party to the second suit. See *Moldovan v. Great Atl. & Pac. Tea Co.,* 790 F.2d 894, 899 (3d Cir.1986), *cert. denied,* 485 U.S. 904, 108 S.Ct. 1074, 99 L.Ed.2d 233 (1988); see also *Tyus v. Schoemehl,* 93 F.3d 449, 455 (8th Cir.1996) (court will apply virtual representation only when existence of special relationship between parties justifies preclusion), *cert. denied,* 520 U.S. 1166, 117 S.Ct. 1427, 137 L.Ed.2d 536 (1997); *Becherer v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 43 F.3d 1054, 1070 (6th Cir.) (virtual representation demands express or implied legal relationship in which parties to first suit are accountable to non-parties who file subsequent suit raising identical issues), cert. denied, 516 U.S. 912, 116 S.Ct. 296, 133 L.Ed.2d 203 (1995); *Gonzalez v. Banco Cent. Corp.,* 27 F.3d 751, 762 (1st Cir.1994) ("the parties' independence—the inescapable fact that the [prior] plaintiffs were not legally responsible for, or in any other way accountable to, the [nonparty] plaintiffs—weighs heavily against a finding of virtual representation"); *Amalgamated Sugar Co. v. NL Indus., Inc.,* 825 F.2d 634, 640 (2d Cir.) (interests of non-party must be adequately

represented by another vested with authority of representation), cert. denied, 484 U.S. 992, 108 S.Ct. 511, 98 L.Ed.2d 511 (1987); *Klugh v. United States,* 818 F.2d 294, 300 (4th Cir.1987) (doctrine of virtual representation not applicable where interests of parties are separate or parties to first suit are not accountable to non-parties who file subsequent suit).

Viewing the evidence in the light most favorable to plaintiffs, W & R Investment operates as a separate entity from W & R—with separate assets, a separate board of directors and separate officers—and maintains corporate formalities such as the holding of meetings and maintenance of minutes. In addition, while the Securities and Exchange Commission regulates W & R Investment, the National Association of Securities Dealers regulates W & R. Though the president of W & R Investment holds positions with W & R Financial and all W & R entities share common counsel, defendants have not shown that W & R or W & R Financial had an obligation to safeguard the interests of W & R Investment in the Alabama litigation. W & R and W & R Financial did not have an incentive to throw stones at W & R Investment or otherwise cast it in a negative light in the Alabama litigation. At the same time, defendants have not shown that W & R or W & R Financial were legally responsible for or accountable to W & R Investment for their conduct in the Alabama litigation. Accordingly, the Court overrules defendants' motion for summary judgment as to the claims of W & R Investment.[29]

**IT IS THEREFORE ORDERED** that Defendant Torchmark Corporation's And Defendant Ronald K. Richey's Motion For Summary Judgment (Doc. # 52) filed March 6, 2002 be and hereby is **SUSTAINED in part.** The motion is sustained as to the claims against Torchmark and Richey by Waddell & Reed, Inc. and W & R Financial, Inc. The motion is otherwise overruled. The claims of Waddell & Reed, Inc. and Waddell & Reed Financial, Inc. against McCormick and Hagopian, and the claims of Waddell & Reed Investment Management Company against all defendants remain for trial.

**IT IS FURTHER ORDERED** that the stay on discovery in this case is lifted.

**IT IS FURTHER ORDERED** that on or before **February 14, 2003,** the parties shall confer and submit to Magistrate Judge James P. O'Hara (but not file) a proposed plan to complete discovery.

**IT IS FURTHER ORDERED** that a telephone status conference is set for **Feb-**

**29.** In their reply brief, defendants raise several factual bases to support a finding of virtual representation: (1) W & R Financial manages $32.8 billion in assets through W & R Investment, (2) the president of W & R Investment is an executive vice president of W & R and his deposition was taken in the Alabama case, (3) the general counsel of W & R Investment was intimately involved in the Alabama litigation and his deposition was taken in that action, and (4) the treasurer and director of W & R Investment, Robert Hechler, attended all trial proceedings in the Alabama litigation as the corporate representative of the Alabama W & R Defendants. In their sur-reply, plaintiffs do not dispute these allegations. The allegations by themselves, however, are insufficient to establish as a matter of law that W & R or W & R Financial had an obligation to safeguard the interests of W & R Investment in the Alabama litigation. As the Court explained in a prior order, this is a "murky corner of the law" and it will "tread gingerly in applying res judicata to nonparties." Memorandum And Order (Doc. # 44) filed December 21, 2001 at 16 (quoting *Gonzalez,* 27 F.3d at 757); see *Klugh,* 818 F.2d at 300 (because doctrine of virtual representation applies principles of res judicata to nonparties to judgment, doctrine must be cautiously applied to avoid infringing on principles of due process). At the same time, defendants may be able to further develop the factual record on this issue before trial.

**ruary 24, 2003** at 9:00 a.m. before Magistrate Judge James P. O'Hara. The Court will initiate the call.