John and Theresa **SOPHOCLEUS**, Plaintiffs,

v.

**ALABAMA DEPARTMENT OF TRANSPORTATION, et al.,** Defendants.

Civil Action No. 00–T–652–E.

United States District Court, M.D. Alabama, Eastern Division.

Jan. 26, 2004.

**1240**

Wanda Devereaux, Devereaux & Associates, LLC, James D. Hamlett, Montgomery, AL, Jeffrey W. Bennitt, Robyn G. Bufford–Bennitt, Jeff Bennitt & Associates LLC, Birmingham, AL, for plaintiffs.

Jim R. Ippolito, Jr., Gilda Branch Williams, Alabama Department of Transportation Legal Division, J. Doyle Fuller, Susan G. Copeland, Law Office of J. Doyle Fuller, Montgomery, AL, Horace Cecil Ireland, III, Kathryn L. Harman, Daniel Patrick Avery, Porterfield, Harper & Mills, P.A., Birmingham, AL, for defendants.

## OPINION

MYRON H. THOMPSON, District Judge.

Plaintiffs John and Theresa Sophocleus bring this case against defendants Margie Champion Todd Hopper, Paul Bowlin, Jim-my Butts, and DeJarvis Leonard, all in their individual capacities, and Reese & Howell, Inc. The Sophocleuses allege that the individual defendants, who are employees of the Alabama Department of Transportation, took their home for private use from January 1999 through August 1999,[1] in violation of the fifth and fourteenth amendments to the United States Constitution as enforced through 42 U.S.C.A. § 1983; that the individual defendants conspired with Reese & Howell, Inc., a contractor hired to expand Highway 280, to do this, in violation of 42 U.S.C.A. § 1985; and that Reese & Howell committed the state torts of trespass, invasion of privacy, and outrage during this period.[2] Jurisdiction is alleged under 28 U.S.C.A. §§ 1331 (federal question), 1343 (civil rights), 2201 and 2202 (declaratory judgment), and 1367(a) (supplemental jurisdiction).

This lawsuit is now before the court on defendant DeJarvis Leonard's motion to dismiss, the individual defendants' motion for summary judgment, and Reese & Howell's motion for summary judgment. For the reasons that follow, the court will dismiss this case on the grounds that this court lacks subject-matter jurisdiction over the Sophocleuses' claims under the *Rooker–Feldman* doctrine.[3]

## I. BACKGROUND

This case arises out of the State of Alabama's condemnation of the Sopho-

---

1. At one point, the Sophocleuses argue that the taking for private use was from September 1998 to September 1999. Final amended complaint, filed August 4, 2003 (Doc. no. 64), at 8. At another point, they state it occurred from January through September 1999. *Id.* at 13. In their most recent filings, however, they identify the period in question as January through August 1999. Opposition to individual defendants' motion for summary judgment, filed Nov. 14, 2003 (Doc. no. 82), at 2; Opposition to defendant Reese & Howell's

motion for summary judgment, filed Nov. 14, 2003 (Doc. no. 81), at 1.

2. Opposition to defendant Reese & Howell's motion for summary judgment, filed November 14, 2003 (Doc. no. 81), at 1–2. The Sophocleuses state their claims in slightly different terms in their final amended complaint, filed August 4, 2003 (Doc. no. 64).

3. A federal court "must always dismiss a case upon determining that it lacks subject matter jurisdiction, regardless of the stage of the

cleuses' property. In May 1998, the State filed a petition for condemnation with the Probate Court of Lee County, Alabama, seeking to condemn the Sophocleuses' land and several other tracts of land for the purposes of expanding Highway 280, a public road.[4] Pursuant to the procedures set forth by the Alabama Eminent Domain Code, 1975 Ala.Code § 18–1A–1 et seq., the probate court appointed commissioners to assess the value of the land to be condemned. The commissioners appraised the property at $85,000, and the probate court entered a "Decree of Condemnation" on August 3, 1998, awarding the Sophocleuses $85,000 for their property.[5] On August 7, the State paid $85,000 into the probate court, and the Sophocleuses received a letter demanding that they vacate their property by September 10.

The Sophocleuses refused to move, and tensions between the Sophocleuses and the State increased. Department of Transportation officials asked the Sophocleuses in person to leave their property, and employees of Reese & Howell drove "heavy earth moving machines" onto the Sophocleuses' property, destroying landscaping and causing loud noises.[6] At one point someone drove a backhoe towards the Sophocleuses' house, and Mr. Sophocleus met the driver on the porch with a rifle. The backhoe driver then left.[7] Sometime before September 1, 1998, someone cut the sewer line to the Sophocleuses' house, preventing them from using their toilets.[8] On October 7, 1998, the Sophocleuses appealed the probate court's order of condemnation to the state trial court,[9] and the State of Alabama cross-appealed.[10] Under 1975 Ala.Code § 18–1A–283, any party can appeal a probate court's order of condemnation to the state trial court for a trial de novo. In 1998, during discovery in the appeal, the Sophocleuses admitted that the taking of their land was for a "public use," but also stated that the taking of their property was not "necessary" for the highway improvements.[11]

In December 1998, the State of Alabama filed a suit in state trial court seeking to evict the Sophocleuses. This was a separate action from the condemnation suit. In an affidavit filed on December 13, 1998, in the eviction case, Mr. Sophocleus stated that "officials from the Department of Transportation now intend to use my house … for use by public transportation officials for work purposes. Consequently, this property and the house located thereon are not currently needed for the construction of Highway 280 as the Department of Transportation has no intention of razing the house."[12]

After a trial on January 12, 1999, the state court in the eviction case issued a writ of possession evicting the Sophocleus-

proceedings." *Goodman v. Sipos*, 259 F.3d 1327, 1332 n. 6 (11th Cir.2001).

4. Petition for Condemnation, exhibit 5 of Reese & Howell's exhibits, filed Oct. 20, 2003 (Doc. no. 73).

5. Decree of Condemnation, exhibit 6 of Reese & Howell's exhibits.

6. Final amended complaint, filed Aug. 4, 2003 (Doc. no. 64), at 3–4.

7. *Id.* at 4–5.

8. *Id.* at 4.

9. Appeal Cover Sheet, exhibit 9 of Reese & Howell's exhibits.

10. Final amended complaint, filed Aug. 4, 2003 (Doc. no. 64), at 2.

11. Sophocleuses' responses to State of Alabama's request for admission, exhibit 10 of Reese & Howell's exhibits.

12. Counter affidavit of John Sophocleus, exhibit 11 of Reese & Howell's exhibits.

es and granting possession of the property to the State.[13] The Sophocleuses had the right to appeal the court's decision if they paid $250 a month pending the outcome of the appeal; however, they did not do so. The Sophocleuses maintain that the reason they did not appeal is that their attorney informed them that the State's attorney said that Margie Champion Todd Hopper, a state Right–of–Way Engineer, had threatened that if the Sophocleuses did not vacate their house, and then lost their appeal, that the State or its employees "would seek damages against them for holding up construction of the highway, which could amount to a $10,000 a day fine."[14] On January 13, the State's attorney wrote a letter to the Sophocleuses' attorney confirming their agreement that "in exchange for the State agreeing to give them … additional time [to move out], the Sophocleus[es] agree not to appeal the Judge's order of eviction."[15] The Sophocleuses moved out of their house on January 18, 1999. Their decision not to appeal the eviction order did not affect their appeal of the probate court's condemnation order, which was still pending in the state trial court.

The Sophocleuses allege that from January to August 1999 they were "forced out of their home" so that the contractors, Reese & Howell, could "sleep in their house, live in it, use it as quarters, and use it as an office."[16] They further claim that the defendants did this "for a vindictive purpose."[17] Mr. Sophocleus and some of his acquaintances state that they drove by the house during this period and observed people watching television and playing music in the house, playing football and riding a four-wheeler in the yard, working on cars in the shop next to the house, and sitting on the stoop drinking what appeared to be beer.[18] The Sophocleuses' acquaintance Patrick Byrd observed cars parked at the Sophocleuses' house at night, "well after working hours," which were still there in the morning; thus, he states, people were sleeping there.[19] The Sophocleuses also allege that Reese & Howell used their house as an office; their evidence for this is that when Mr. Sophocleus entered the house with the state appraiser in August 1999, he saw "a reconnected sewer, replaced phone jacks in the wall, drawings scattered about, milk crates on the floor placed up to those very large wooden spools that are used as a makeshift desk or table, newspapers, used fast-food wrappers, cans, bottles, paper cups and other debris on the floor that I had not left in the home."[20]

On August 11, 1999, the Sophocleuses filed an "Amended Appeal" in the condemnation case in the state trial court. In this pleading, the Sophocleuses stated that

---

13. Writ of possession, exhibit 12 of Reese & Howell's exhibits.

14. Final amended complaint at 6. This court has already dismissed the Sophocleuses' claim of "premature eviction by lawsuit" because the *Rooker–Feldman* doctrine deprives this federal court of jurisdiction to consider whether the defendants had the right to evict the Sophocleuses. Order, filed May 14, 2003 (Doc. no. 50), at 15.

15. Letter, exhibit 13 of Reese & Howell's exhibits.

16. Opposition to individual defendants' motion for summary judgment, filed Nov. 14, 2003 (Doc. no. 82), at 7–8.

17. *Id.* at 2.

18. *Id.* at 8.

19. Declaration of Patrick Byrd, exhibit 6 to plaintiffs' evidentiary submissions, filed Nov. 14, 2003 (Doc. no. 83), at 2.

20. Declaration of John Sophocleus, exhibit 4 to plaintiffs' evidentiary submissions.

they were evicted in January 1999 "under allegations to the Court that there was an immediate need for the property and that the structures thereon would be immediately destroyed," but that "[d]espite these allegations to the court, the State failed and refused, for an unreasonable period of time, to destroy the Appellants' home and/or to make use of the condemned property."[21] They further alleged that the actions of the State were "capricious, arbitrary and done in bad faith."[22] They asked the court to "set aside the decision of the Commissioners" as to the proper compensation for their land, and to award "other, further or different relief, including but not limited to punitive damages, damages for mental anguish and expenses for the second relocation, as may be just and proper."[23]

Also on August 11, the Sophocleuses filed pretrial contentions with the state trial court in which they repeated the allegations, made in their counter-affidavits in the eviction case, that in December 1998 "the State of Alabama had no current need for the condemned property and that the State intended to use the structures located on the property for storage, despite the fact that no just compensation had been paid for the same." They further alleged that since their eviction in January 1999, "their house remains intact and inhabitable."[24]

The day before the condemnation action was scheduled for a de novo trial, the parties settled the case. The Sophocleuses agreed to the condemnation and the State agreed to pay them $145,000. On September 23, 1999, the state trial court entered an order of decree and condemnation, stating:

"The parties to this cause reached a settlement and advised this Court of the same. Thereupon, the Court proceeded to hear the allegations of the application or petition for an order of condemnation, and upon the consideration of said application and with the consent and agreement of the parties and for good cause shown, it is the opinion and judgment of the Court that the allegations of said petition are true, and that it is necessary that the property described in Exhibit "A" be condemned for the uses and purposes stated in said petition and that the said application for order of condemnation should be granted."[25]

The Sophocleuses' house was destroyed sometime in November 1999.[26] The Highway 280 expansion project was completed and now occupies the land where the house used to be.[27]

21. Amended appeal, exhibit 15 of Reese & Howell's exhibits, filed Oct. 20, 2003 (Doc. no. 73), at 2.

22. *Id.* at 2–3.

23. *Id.* at 3. On August 11, 1999, the Sophocleuses also filed a Notice of Constitutional Challenge alleging that the Alabama Eminent Domain Code was unconstitutional because it does not allow for "the imposition of punitive damages based on the conduct of the condemnor; said statutes fail to provide for the award of mental anguish; and said statutes fail to provide for second or subsequent relocation expenses." Notice of constitutional challenge, exhibit 17 of Reese & Howell's exhibits.

24. Pretrial contentions, exhibit 16 of Reese & Howell's exhibits.

25. Order and decree of condemnation, exhibit 18 of Reese & Howell's exhibits.

26. Opposition to defendant Reese & Howell's motion for summary judgment, filed Nov. 14, 2003 (Doc. no. 81), at 2.

27. Deposition of John Sophocleus, exhibit 1 of individual defendants' exhibits in support of motion for summary judgment, filed Oct. 27, 2003 (Doc. no. 77), at 464.

On May 19, 2000, the Sophocleuses filed this federal lawsuit against the Alabama Department of Transportation, various individual defendants, and Reese & Howell. Magistrate Judge Walker, who was then handling the case by consent of the parties, dismissed all claims against the Alabama Department of Transportation, the claims against the individual defendants in their official capacities, the claims attacking the sufficiency of compensation awarded by the state court,[28] and all claims against Rhonda Ashworth and Mack Roberts.[29] The Sophocleuses amended their complaint to add DeJarvis Leonard as a defendant.[30] The individual defendants now are DeJarvis Leonard, the Fourth Division Engineer for the Alabama Department of Transportation, who managed the day-to-day operation of the Fourth Division during the time the Department took the Sophocleuses' land; Margie Champion Todd Hopper, the Fourth Division Right-of-Way Engineer, who had authority to make decisions in the Highway 280 expansion project; Paul Bowlin, the Right-of-Way Chief for the Alabama Department of Transportation; and Jimmy Butts, the Director of Transportation.[31]

## II. LAW-OF-THE-CASE DOCTRINE

Reese & Howell and the individual defendants argue that this court lacks jurisdiction over the Sophocleuses' claims under the *Rooker–Feldman* doctrine.[32] The Alabama Department of Transportation and Reese & Howell made similar arguments in earlier motions to dismiss in this case, but United States Magistrate Judge Susan Russ Walker denied those motions on the ground that the *Rooker–Feldman* doctrine did not bar the Sophocleuses' claims that their home was taken for private use.[33] The Sophocleuses argue that the defendants' arguments should fail because Magistrate Judge Walker already decided the issue against the defendants. Although they do not name it, the Sophocleuses are invoking the law-of-the-case doctrine.

The law-of-the-case doctrine holds that "when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 816, 108 S.Ct. 2166, 2177, 100 L.Ed.2d 811 (1988) (internal citations omitted). The rule "promotes the finality and efficiency of the judicial process by protecting against the agitation of settled disputes." *Id.* (internal citations omitted). The doctrine "directs a court's discretion, it does not limit the tribunal's power." *Arizona v. California*, 460 U.S. 605, 618, 103 S.Ct. 1382, 1391, 75 L.Ed.2d 318 (1983). A court always "has the power to revisit prior decisions of its own or of a coordinate court in any circumstance, although as a rule courts should be loath to do so in the absence of extraordinary circumstances

---

28. Order of Feb. 18, 2003 (Doc. no. 31).

29. Order of Apr. 1, 2003 (Doc. no. 42).

30. Amended complaint, filed Aug. 4, 2003 (Doc. no. 64).

31. Opposition to defendant Reese & Howell's motion for summary judgment, filed Nov. 14, 2003 (Doc. no. 81), at 3–5.

32. The defendants also seek summary judgment on other grounds. However, if the *Rooker–Feldman* doctrine applies, then this court does not have jurisdiction to decide anything about the merits of the case. *Powell v. Powell*, 80 F.3d 464, 466 (11th Cir.1996); *Garry v. Geils*, 82 F.3d 1362, 1363 (7th Cir. 1996).

33. Order, filed Feb. 18, 2003 (Doc. no. 31), at 8; Order, filed Apr. 2, 2003 (Doc. no. 44), at 1–2.

such as where the initial decision was clearly erroneous and would work a manifest injustice." *Christianson*, 486 U.S. at 817, 108 S.Ct. at 2178 (internal citations omitted); *see also Jenkins Brick Co. v. Bremer*, 321 F.3d 1366, 1372 (11th Cir. 2003).

■■ On the other hand, the law-of-the-case doctrine's presumption against reconsideration of already decided issues is weaker in the area of a court's subject-matter jurisdiction. It is the "ultimate responsibility of the federal courts ... to reach the correct judgment under law," and nowhere is that responsibility "greater and more unflagging than in the context of subject matter jurisdiction issues, which call into question the very legitimacy of a court's adjudicatory authority." *American Canoe Ass'n v. Murphy Farms, Inc.*, 326 F.3d 505, 515 (4th Cir.2003). This is why the question of "federal subject-matter jurisdiction remains open until there is no opportunity to continue the proceeding by appeal." Wright, Miller & Cooper, *Federal Practice & Procedure* § 4478 (2d ed.2003). Also, of course, "a district court's adherence to law of the case cannot insulate an issue from appellate review." *Christianson*, 486 U.S. at 817, 108 S.Ct. at 2178.

With these principles in mind, the court turns to the question of whether the *Rooker–Feldman* doctrine bars the Sophocleuses' claims.

## III. *ROOKER–FELDMAN* DOCTRINE

■■ The *Rooker–Feldman* doctrine, coined to reflect the holdings in *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 415–16,

44 S.Ct. 149, 150, 68 L.Ed. 362 (1923), and *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 476–82, 103 S.Ct. 1303, 1311–15, 75 L.Ed.2d 206 (1983), "places limits on the subject matter jurisdiction of federal district courts and courts of appeal over certain matters related to previous state court litigation." *Goodman v. Sipos*, 259 F.3d 1327, 1332 (11th Cir. 2001). The *Rooker–Feldman* doctrine provides that "federal courts, other than the United States Supreme Court, have no authority to review the final judgments of state courts." *Goodman*, 259 F.3d at 1332. The doctrine "applies not only to claims presented or adjudicated by a state court, but also to claims that are 'inextricably intertwined' with a state court's judgment." *Id.* A federal claim is inextricably intertwined with a state-court judgment "if the federal claim succeeds only to the extent that the state court wrongly decided the issues before it." *Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 25, 107 S.Ct. 1519, 1533, 95 L.Ed.2d 1 (1987).[34] However, even if a claim is inextricably intertwined with the state court's judgment, the doctrine does not apply if the federal plaintiff had no "reasonable opportunity to raise his federal claim in state proceedings." *Powell v. Powell*, 80 F.3d 464, 467 (11th Cir. 1996).

■ Thus, the question in this case is whether the Sophocleuses' claims that the individual defendants took their property for a private purpose, and with a vindictive motive, from January to August 1999, that these individuals conspired with Reese & Howell to do this, and that Reese & Howell committed state torts during this period, were raised or adjudicated in state

---

**34.** The different federal appellate courts interpret the *Rooker–Feldman* doctrine differently. Some hold that the doctrine is applicable only where the injury the federal plaintiff alleges is *caused by* the state court. *See, e.g., Garry v. Geils*, 82 F.3d 1362 (7th Cir.1996). Under this standard, the Sophocleuses' claims might not be barred. However, the Eleventh Circuit has not adopted this view of the *Rooker–Feldman* doctrine. *Goodman v. Sipos*, 259 F.3d 1327, 1333 n. 7 (11th Cir.2001).

court or were "inextricably intertwined" with the state court's September 1999 order of decree and condemnation.[35] Put another way, if the Sophocleuses' current claims succeed only to the extent that the state trial court's judgment adopting the parties' settlement agreement wrongly resolved the issues in that case, then this court does not have jurisdiction over their claims.

### A. Claims Were Presented to State Court

A review of the record shows that the Sophocleuses did, in fact, raise their current claims in state court. In August 1999 they alleged that the State had not had a "current need" for their property in December 1998, that the State had refused to make use of their property from January to August 1999, that the State's actions were capricious, arbitrary, and done in bad faith, and that their house had not been destroyed and was still inhabitable.[36] Admittedly, they did not explicitly state that their property had been taken for a private purpose for the period from January to August 1999, or that there was a conspiracy to do this; nor did they seek damages for those alleged constitutional violations. They also did not allege that the State's contractors had committed torts during this period.

■ However, Eleventh Circuit decisions hold that the *Rooker–Feldman* doctrine applies even though the federal plaintiff is seeking a form of relief that would

not be available in state court. *Goodman v. Sipos,* 259 F.3d 1327, 1333 (11th Cir. 2001). The focus is on the "federal claim's relationship to the issues involved in the state court proceeding, rather than on the type of relief sought by the plaintiff." *Id.* Thus, the fact that the Sophocleuses did not make any conspiracy or tort claims in state court is not controlling; what is controlling is the fact that they presented the facts underlying their "private use" claim to the state court. The conspiracy and tort claims are dependent on the private use claim; if the taking was not for a private use, then there was no conspiracy and the contractors were not committing torts by occupying the land.

■ Of course, the state trial court did not decide any claims in this case because the parties settled before the trial. However, a state-court-approved settlement agreement "is a judgment or decision for purposes of the *Rooker–Feldman* doctrine." *4901 Corp. v. Town of Cicero,* 220 F.3d 522, 528 n. 5 (7th Cir.2000); *accord Gisslen v. City of Crystal,* 345 F.3d 624, 626 (8th Cir.2003) (holding that the *Rooker–Feldman* doctrine barred a claim of constitutional violations during a condemnation proceeding where landowner settled the state condemnation claim).

### B. Federal Claims Are Inextricably Intertwined with State Court Judgment

Even if the Sophocleuses' allegations in their pleadings in the state trial court had

---

**35.** As explained *supra,* there were two state-court proceedings: the condemnation case and the eviction case. However, the Sophocleuses could not have fully raised the question of whether the taking was for private use from January through August 1999, and thus that issue could not have been "inextricably intertwined" with the judgment in the eviction case, because the judgment in the eviction case was handed down in January 1999, before the factual predicate for the current claims occurred. Similarly, they could not

have raised this issue in the initial probate-court proceeding in the condemnation case, since it occurred in 1998. However, they could have raised the issue in their appeal in the condemnation case; they were scheduled to have a de novo trial in the state trial court in August 1999.

**36.** *See supra* nn. 21–24 and accompanying text.

not raised the issue of whether the State needed or was using their property, the issues they now raise are "inextricably intertwined" with the state court's judgment. This is so because the state trial court's judgment determined, consistent with the parties' settlement agreement, (1) that the condemnation of the Sophocleuses' property was necessary and for a public use, and (2) that the agreed-upon compensation was adequate. If the Sophocleuses were to prevail in this case by convincing this court that the taking of their land was for a private use from January to August 1999, and were to win damages based on that claim, that would mean that the state court was wrong in concluding (1) that the condemnation was necessary and for a public use, and (2) that the compensation the Sophocleuses received was adequate. *Gisslen v. City of Crystal,* 345 F.3d 624, 627 (8th Cir.2003).

Other federal courts have concluded that similar claims of constitutional violations connected to state-condemnation proceedings are barred by the *Rooker–Feldman* doctrine. In a recent Eighth Circuit case, a federal plaintiff brought claims under 42 U.S.C.A. §§ 1983, 1985, and 1986 against a city and city officials for alleged constitutional violations related to the city's taking of his property in a state eminent-domain proceeding. The plaintiff alleged that the condemnation action was political retaliation against him in violation of the first and fourteenth amendments, that the city singled out his property for condemnation in violation of his equal-protection rights, that he was inadequately compensated for his property, that the condemnation action was undertaken "hurriedly" to prevent him from pursuing his rights, and that city officials acted under color of state law to conspire to deprive him of his rights. *Gisslen,* 345 F.3d at 625–26. The federal court stated that, although the plaintiff was not asking for his property to be returned, his action was barred by *Rooker–Feldman* because the plaintiff's claims were "inextricably intertwined" with the state court's judgment. If the plaintiff were to succeed in federal court, that would necessarily mean that the state court had either wrongly decided that the taking was in the public interest, or had wrongly concluded that the plaintiff had been fairly compensated for the loss of his property. *Id.* at 627. That the plaintiff was seeking compensatory damages that were not available in state court did not change the result, because "the reality is that [the plaintiff] is asking the federal court for the same remedy requested in the state court action: just compensation." *Id.* at 628.

The Seventh Circuit also held that the *Rooker–Feldman* doctrine barred a federal challenge which claimed that the state-court condemnation of the federal plaintiffs' property was unconstitutional. There, the plaintiffs alleged that the condemnation was politically motivated. The court held that the plaintiffs' claim was "inextricably intertwined with the state court judgment and the finding that the power of eminent domain was being properly exercised." *Garry v. Geils,* 82 F.3d 1362, 1369 (7th Cir.1996). If the plaintiffs wanted to challenge the state-condemnation action as unconstitutional, "they should have done so through the Illinois condemnation process, and ultimately to the United States Supreme court if necessary." *Id.* at 1368. The same is true of the Sophocleuses' claim.

While the Eleventh Circuit has not addressed the *Rooker–Feldman* doctrine in a case alleging constitutional violations in a state eminent-domain proceeding, its decisions based on the doctrine are consistent with this court's decision. In *Goodman v. Sipos,* 259 F.3d 1327 (11th Cir.2001), a mother and her son brought a federal

§ 1983 action against employees of the State Department of Family and Children Services, seeking damages for alleged constitutional violations that occurred in connection with a state juvenile proceeding which removed the child from his mother's custody. The federal action did not seek to prevent the enforcement of the custody order. Nonetheless, the federal court held that two of the mother's claims, namely her allegations that an affidavit the state court relied upon was false and that a state-court ex parte proceeding violated her due-process rights, and that a state caseworker violated her son's due-process rights when she threatened the plaintiff's family friend with arrest if he did not return the child to the State Department of Family and Children Services, were barred by the *Rooker–Feldman* doctrine. These contentions "str[uck] at the heart of the state court's proceedings and judgment" because the state court decided to take custody of the child away from the mother only after finding the affidavit to be credible and finding that the child should not be returned to the custody of the family friend. *Id.* at 1334. In contrast, the mother's claim that a search of her home was unconstitutional was not barred because the state court did not rely on any evidence derived from the search. *Id.* at 1333–34. Like the barred claims in *Goodman,* the Sophocleuses' claims directly implicate the correctness of the state court's judgment: if they are right that the State took their home for private use, then the state court was wrong to conclude that the condemnation was for a public use.

In another Eleventh Circuit case, *Dale v. Moore,* 121 F.3d 624 (11th Cir.1997), the court held that an attorney's Americans with Disabilities Act suit against the State of Florida and an official of the Florida Board of Bar Examiners challenging the Board's investigation into his disability was barred by *Rooker–Feldman* even though the attorney had been admitted to the bar. Although he did not seek the reversal of the Florida Supreme Court's decision to admit him to the bar, his challenge to the State's application of court rules on attorney admissions was "inextricably intertwined" with the state court's decision. As in *Dale,* here the Sophocleuses do not explicitly seek the reversal of the state court's decision, but their federal claims are nonetheless inextricably intertwined with that decision.

■ The Sophocleuses assert, and Magistrate Judge Walker agreed, that their claims are not inextricably intertwined with the state-court judgment because they are not challenging either the State of Alabama's right to condemn their land or the valuation of their property.[37] Rather, the Sophocleuses argue, they are alleging that their property was taken for private use for a period of time in which it was not needed, an unconstitutional act for which no amount of compensation can compensate. *See Hawaii Housing Authority v. Midkiff,* 467 U.S. 229, 104 S.Ct. 2321, 81 L.Ed.2d 186 (1984). The Sophocleuses' argument is based on the idea that the taking that occurred from January to August 1999 is separate from the taking that occurred after that date, with the former period being for a private use and the latter for public use.

However, there is no legal authority to support the idea that the condemnation of one piece of property can be broken into two separate time periods, with one period being unconstitutional and the other con-

---

**37.** Order, filed Feb. 18, 2003 (Doc. no. 31), at 8; Order, filed Apr. 2, 2003 (Doc. no. 44), at 2.

stitutional. Certainly landowners can challenge the condemnation of their property as unconstitutional on the grounds that the taking is not yet necessary, or that the taking is not for public use because it will not be so used until a future date. *See* Donald M. Zupanec, Annotation, *Eminent domain: Validity of appropriation of property for anticipated future use,* 1977 WL 45801, 80 A.L.R.3d 1085 (1977). In such cases, courts can hold either that the condemnation is constitutional because the ultimate purpose is a public one, or can rule that the condemnation is invalid because the land is not needed until some point in the future. *Compare Appeal of Waite,* 163 Pa.Cmwlth. 283, 641 A.2d 25, 28–29 (1994) ("It has long been recognized that a condemnor may acquire land for future expansion, even if it cannot presently use the land for the purposes stated in the declaration of taking, so long as the land will be necessary in good faith for future use within a reasonable time") *and Test v. Broward County,* 616 So.2d 111, 113 (Fla.App.1993) ("there need not be an immediate need for the property sought to be taken") *with Appeal of Octorara Area Sch. Dist.,* 124 Pa.Cmwlth. 472, 556 A.2d 527, 531 (1989) ("Condemnation of an entire working farm for school buildings projected to be needed over the next 5 to 12 years ... is beyond the eminent domain power vested in the Board"). However,

courts in such cases do not split the condemnation into separate time periods and conclude that one is valid while the other is not. Therefore, the state court's judgment that the condemnation of the Sophocleuses' land was necessary and for a public purpose precludes the possibility that it was unconstitutional for a certain period of time.

## C. Opportunity to Raise in State Court

As noted above, the *Rooker–Feldman* doctrine is not applicable where the federal plaintiffs had no "reasonable opportunity" to raise their claims in state court. Of course, this inquiry is generally not relevant when, as here, the plaintiffs did actually raise their claims in state court.[38] However, even if they had not raised their claims in state court, the Sophocleuses certainly had the opportunity to do so.[39] Alabama courts, including probate courts and state trial courts in condemnation actions, can and do consider claims that a taking is for a private use. *See, e.g., Lockridge v. Adrian,* 638 So.2d 766 (Ala.1994) (reversing probate and trial court's holdings that taking was unconstitutional because it was for a private use); *Florence v. Williams,* 439 So.2d 83 (Ala.1983) (discussing probate court's making findings that a taking was for a public use); *see also Gober v. Stubbs,*

---

**38.** Since the parties settled the state-court case, the state court never addressed the Sophocleuses' allegations about the use of their property from January to August 1999. Thus, it is theoretically possible that the Sophocleuses could have made arguments that the state court would not have had the jurisdiction to address. However, as the discussion here shows, the state court would have been able to adjudicate the claim that the taking was not necessary or was not for a public purpose; and indeed it found that the taking was necessary for the stated purpose of expanding Highway 280.

**39.** It is immaterial that the defendants in this case were not parties to the state-court action; the Sophocleuses were still able to present their claim that their land was taken for a private use to the state court. *See Powell v. Powell,* 80 F.3d 464, 468 (11th Cir.1996) ("The absence of [a federal defendant] from the state court proceeding did not deprive [the federal plaintiff] of an opportunity to press his claim"); *Gisslen v. City of Crystal,* 345 F.3d 624 (8th Cir.2003) ("Federal court jurisdiction is not determined by whether the parties are identical, but by whether the claims are sufficiently separate from those of the state court action.")

682 So.2d 430 (Ala.1996) (affirming a denial of a petition for writ of mandamus on the grounds that a condemnation was for a public use); *Hemperly v. Crumpton*, 708 F.Supp. 1247, 1250 n. 5 (M.D.Ala.1988) ("Past history has shown that Alabama courts are amenable to considering arguments by landowners that the purpose being served in acquiring property through condemnation serves no public purpose").

### D. Factual Predicate Occurred after Initiation of State Suit

■ As Magistrate Judge Walker pointed out, the factual predicate for the Sophocleuses' claims did not occur until after the State of Alabama initiated the condemnation action.[40] Under Eleventh Circuit law, "res judicata does *not* apply where the facts giving rise to the second case only arise after the original pleading is filed in the earlier litigation." *In re Piper Aircraft Corp.*, 244 F.3d 1289, 1298 (11th Cir.2001) (emphasis in original). Res judicata, also known as claim preclusion, is the rule that "a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." *Allen v. McCurry*, 449 U.S. 90, 94, 101 S.Ct. 411, 414, 66 L.Ed.2d 308 (1980). Res judicata, collateral estoppel, and the *Rooker–Feldman* doctrine have a "close affinity" to one another. *Agripost, Inc. v. Miami–Dade County*, 195 F.3d 1225, 1229 n. 7 (11th Cir.1999). If this court lacks jurisdiction over this case, then it cannot reach the question of whether res judicata applies. *Garry v. Geils*, 82 F.3d 1362, 1363 (7th Cir.1996). However, given the similarities between res judicata and *Rooker–Feldman*, it is relevant to consider whether the *Rooker–Feldman* doctrine might be inapplicable to the Sophocleuses' claims because the factual predicate for

them did not occur until after the state court action was filed.

■ Even if the doctrines of res judicata and *Rooker–Feldman* were identical, the Sophocleuses' claims would not be barred. Res judicata bars "claims in existence at the time the original complaint is filed or claims *actually* asserted by supplemental proceedings or otherwise in the earlier action." *Manning v. City of Auburn*, 953 F.2d 1355, 1360 (11th Cir.1992) (emphasis in original). As discussed *supra*, the Sophocleuses did actually assert their claims in state court by filing an amended pleading and pretrial contentions. Thus, they are now barred from raising those issues again in federal court.

■ However, even if the Sophocleuses had not raised their claims in state court, the *Rooker–Feldman* doctrine would bar them. The rationale for the rule that claims arising after the original complaint is filed are not barred does not apply in the *Rooker–Feldman* context in the same way it does in the area of res judicata. The rationale for the rule in the area of res judicata is that when procedural rules, such as the Federal Rules of Civil Procedure, allow but do not require a party to supplement her pleadings, res judicata "creates no absolute duty to supplement a complaint." *Manning v. City of Auburn*, 953 F.2d 1355, 1360 (11th Cir.1992). Thus, a party's decision not to supplement her pleadings to alert the court to new claims, based on new facts that had not occurred when the case was initiated, does not bar the party from bringing a later action based on those claims.

However, courts take a different approach to permissive pleadings in cases involving the *Rooker–Feldman* doctrine. Federal claims that are inexplicably intertwined with state-court proceedings are

---

**40.** Order, filed Feb. 18, 2003 (Doc. no. 31), at 10.

barred by *Rooker–Feldman* when the plaintiff had a "reasonable opportunity" to litigate the claims in state court by making permissive filings. For instance, the Eleventh Circuit noted that a plaintiff who complained of disability discrimination in the consideration of his application for admission to the Florida bar had an opportunity to raise his claim in state court by making permissive filings. *Dale v. Moore,* 121 F.3d 624, 627 (11th Cir.1997). He could have filed an answer to the Florida Bar Association's recommendation or could have filed a petition with the Florida Supreme Court; neither of these filings were mandatory. Because his federal claim was inexplicably intertwined with his state-court proceeding, and because he had an opportunity to raise his claims in state court, his claims were barred by the *Rooker–Feldman* doctrine.

Following similar reasoning, at least one federal appeals court has held that the *Rooker–Feldman* doctrine applied in a condemnation case in which the federal plaintiffs did not learn of the factual predicate for their federal claims until after the state-court action was commenced. There, the federal plaintiffs alleged that they did not learn of the facts underlying their federal claim until a hearing in the condemnation case that occurred two years after the condemnation proceeding was initiated. The court stated that even if that were true, the plaintiffs should have sought an immediate stay of the state proceedings or should have appealed. The *Rooker–Feldman* doctrine barred the plaintiffs' claims. *Garry v. Geils,* 82 F.3d 1362, 1369 n. 13 (7th Cir.1996).

Thus, the fact that the Sophocleuses did not learn of the facts underlying their federal claims until after the state condemnation case was filed does not change the result today. The Sophocleuses did assert their claims in pleadings before the state court. Even if they had not, they had ample opportunity to do so; had they not settled their case, they would have had a trial de novo in the state trial court in August 1999. 1975 Ala.Code § 18–1A–283.

## IV. CONCLUSION

For the reasons explained above, this case will be dismissed. An appropriate judgment will be entered.

## JUDGMENT

In accordance with the memorandum opinion entered on this date, it is the OR-DER, JUDGMENT, and DECREE of this court:

(1) The following motions are granted to the extent that this lawsuit is dismissed because the court lacks subject-matter jurisdiction: defendant DeJarvis Leonard's motion to dismiss the amended complaint, filed July 28, 2003 (Doc. no. 62); Reese & Howell, Inc.'s motion for summary judgment, filed October 20, 2003 (Doc. no. 71); and defendants Paul Bowlin, Jimmy Butts, Margie Champion Todd Hopper, and Leonard's motion for summary judgment, filed October 27, 2003 (Doc. no. 75).

(1) This case is dismissed because the court lacks subject-matter jurisdiction.

It is further ORDERED that costs are taxed against plaintiffs John and Theresa Sophocleus, for which execution **may issue.**

The clerk of the court is DIRECTED to enter this document on the civil docket as a final judgment pursuant to Rule 58 of the Federal Rules of Civil Procedure.